STATE of Wisconsin, Plaintiff-Respondent,

v.

David Paul ANDERSON, Defendant-Appellant.

Court of Appeals

*No. 86–2306–CR. Argued August 12, 1987.—Decided November 4, 1987.*

(Also reported in 417 N.W.2d 411.)

On behalf of the defendant-appellant there were briefs and oral argument by *Patricia Flood,* assistant state public defender.

On behalf of the plaintiff-respondent there was a brief by *Donald J. Hanaway,* attorney general and

*Christopher G. Wren,* assistant attorney general, with oral argument by *Christopher G. Wren.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. David P. Anderson appeals his convictions for one count of carrying a concealed weapon contrary to sec. 941.23, Stats., and one count of possession of a firearm by a felon contrary to sec. 941.29(1) and (2), Stats. Anderson contends that the stop, seizure and search of his vehicle and person were unconstitutional. The trial court held that the search and seizure was valid under *Terry v. Ohio,* 392 U.S. 1 (1968) and sec. 968.24, Stats., the "temporary detention statute." Upon appeal, the state does not defend the trial court's ruling under sec. 968.24. Instead, the state contends that the search and seizure of Anderson's vehicle and person were valid under the police "community caretaker" function. We agree that this case does not present a sec. 968.24 "temporary detention" situation. Therefore we reverse the trial court's judgment. Because factual issues remain to be resolved under the "community caretaker" function, we remand for further proceedings.

Officers Thomas Bushey and Charles Nicoud of the City of Elkhorn Police Department were patrolling an alley in the city of Elkhorn on May 28, 1985, at approximately 2:00 a.m. when they noticed Anderson's vehicle approaching their squad car. Officer Bushey had previously received complaints that Anderson's vehicle was parked in private business stalls in the area. Although Officer Bushey had run a license plate check on Anderson's vehicle a week or two earlier, he had made no previous attempt to contact Anderson about the parking problem.

Upon seeing the squad car containing the two officers, Anderson turned south into an adjoining alley, attaining a speed of approximately ten to fifteen miles per hour. He then turned onto the city streets, attaining a speed of approximately thirty miles per hour. The officers followed and activated their red and blue flashing lights. Anderson stopped immediately. After the stop, the officers turned the squad's spotlights on Anderson's vehicle.

According to Officer Bushey's testimony, Anderson was stopped because he had driven his vehicle away from the officers in the alley and because the officers wished to speak to him about the parking matter.

After the vehicle was stopped, the officers saw Anderson's arms "feverishly moving as to try to hide something underneath the seat or pull something out from underneath the seat." The officers approached the car, Officer Bushey on the driver's side and Officer Nicoud on the passenger's side. As the officers approached, Anderson's arms were still moving underneath the seat. Officer Nicoud then saw a leather object sticking out from underneath the seat. Officer Bushey ordered Anderson to place his hands on the steering wheel and then ordered Anderson out of the car and handcuffed him. Meanwhile, Officer Nicoud searched the vehicle and found an empty holster (the leather object), a .22 caliber loaded revolver, a Gerber survival knife and two steak knives. A pat-down search of Anderson revealed two multi-functional knives, a pair of handcuffs and a box of .22 caliber shells.

Anderson brought a motion to suppress all the evidence discovered in the search of his vehicle. The trial court denied the motion, concluding that the stop

of Anderson's vehicle was permitted under *Terry v. Ohio,* 392 U.S. 1 and sec. 968.24, Stats. Anderson then entered *Alford* pleas to the charges. *See North Carolina v. Alford,* 400 U.S. 25, 37 (1970). Anderson now appeals the denial of the suppression motion, alleging that the stop, seizure and search of his vehicle and person violated the fourth amendment.

It is acknowledged that the police officers did not have probable cause to stop, seize or search Anderson's vehicle. The state also concedes upon appeal that there was no reasonable basis for the officers to conclude that Anderson was committing, was about to commit or had committed a crime, thereby allowing a temporary stop under sec. 968.24, Stats.[1]

Instead, the state relies upon the police "community caretaker" function to justify the officers' actions in this case. This concept was addressed by the United States Supreme Court in *Cady v. Dombrowski,* 413 U.S. 433 (1973), where a warrantless search of a vehicle was permitted because the police were engaged in "what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441.

---

[1]Our reading of the record also satisfies us that sec. 968.24, Stats., does not provide justification for this stop, seizure and search.

Once the vehicle was stopped and the officers saw Anderson attempting to put something under the car seat, sufficient suspicion existed to allow temporary questioning under sec. 968.24, Stats. However, this does not answer the issue in this case because we must address the legality of the *initial* seizure of Anderson's vehicle and person.

This concept was approved by the Wisconsin Supreme Court in *Bies v. State,* 76 Wis. 2d 457, 251 N.W.2d 461 (1977). The freedom of the police to act is not limited to cases where there is probable cause as to the commission of crime. *Id.* at 465, 251 N.W.2d at 465. Police actions beyond the investigation of crime constitute "a part of the 'community caretaker' function of the police which, while perhaps lacking in some respects the urgency of criminal investigation, is nevertheless an important and essential part of the police role." *Id.* at 471, 251 N.W.2d at 468. The key question in such a case is one of prior justification; in other words, did the police have the right to be where they were, make their observations, and take their responsive action. *See id.* at 464, 251 N.W.2d at 465.

Recognizing that police conduct can fall within the community caretaker function, however, does not always place it beyond constitutional scrutiny. The fourth amendment provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The basic purpose of the fourth amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 242 (1973). Stopping a vehicle and detaining its occupant constitute a seizure within the meaning of the fourth amendment. *Delaware v. Prouse,* 440 U.S. 648, 653 (1979); *State v. Guzy,* 139 Wis. 2d 663, 675, 407 N.W.2d 548, 554 (1987). Therefore fourth amendment considerations are implicated under the facts of this case

167

even if the officers were acting pursuant to the community caretaker function of the police.

The ultimate standard under the fourth amendment is the reasonableness of the search or seizure in light of the facts and circumstances of the case. *Bies,* 76 Wis. 2d at 468, 251 N.W.2d at 466. In a community caretaker case, this requires a balancing of the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen. *Id.* at 469, 251 N.W.2d at 467. This test requires an objective analysis of the circumstances confronting the police officer, including the nature and reliability of his information, with a view toward determining whether the police conduct was reasonable and justified. *Id.* This test also requires an objective assessment of the intrusion upon the privacy of the citizen. *See United States v. Martinez-Fuerte,* 428 U.S. 543, 558 (1976).[2] As the state noted at oral argument, this is essentially the *Terry* test, but applied in a community caretaker setting.

---

[2]Although *United States v. Martinez-Fuerte,* 428 U.S. 543 (1976), also speaks of the subjective aspects of an intrusion, this is couched within language which appears to apply an objective analysis of the intrusion:

> This objective intrusion—the stop itself, the questioning, and the visual inspection—also existed in roving-patrol stops. But we view checkpoint stops in a different light because the subjective intrusion—the generating of concern or even fright on the part of lawful travelers—is appreciably less in the case of a checkpoint stop.

*Id.* at 558. We conclude that an objective analysis of the intrusion is appropriate because it does not "imprison" the trial court in the citizen's evaluation—be it great or slight—of the intrusion.

Overriding this entire process is the fundamental consideration that any warrantless intrusion must be as limited as is reasonably possible, consistent with the purpose justifying it in the first instance. *Bies,* 76 Wis. 2d at 469, 251 N.W.2d at 467; *see Terry,* 392 U.S. at 20–21.

█

We conclude that when a community caretaker function is asserted as justification for the seizure of a person, the trial court must determine: (1) that a seizure within the meaning of the fourth amendment has occurred; (2) if so, whether the police conduct was bona fide community caretaker activity; and (3) if so, whether the public need and interest outweigh the intrusion upon the privacy of the individual.

█

As to the last factor—weighing the public need and interest against the intrusion—relevant considerations include: (1) the degree of the public interest and the exigency of the situation;[3] (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved;[4] and

---

[3]As to this factor, the trial court may find *State v. Chisholm,* 696 P.2d 41 (Wash. App. 1985), informative. In *Chisholm,* a police officer stopped a pickup truck solely to inform the driver that his hat was in jeopardy of blowing out of the bed of the vehicle. The court of appeals balanced the individual's interest in proceeding about his business unfettered by police interference against the public's interest in having police officers perform services in addition to traditional enforcement of penal and regulatory laws. *Id.* at 43. The court remanded the matter to the trial court for a determination of whether the stop was "reasonable." *Id.*

[4]In some situations a citizen has a lesser expectation of privacy in an automobile. *See New York v. Class,* 475 U.S. 106,

(4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.

Only the first factor—seizure—has been established thus far in this case. A remand for purposes of determining whether the officers were performing a bona fide community caretaker function is necessary. While police contacts with citizens seeking to resolve or defuse private disputes (such as trespassing) are certainly within the community caretaker function, there is a suggestion in this case that the stop of Anderson's vehicle was a subterfuge.[5] If the trial court finds that a bona fide exercise of the community

112–13 (1986)(quoting *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974)). Despite this diminished expectation of privacy, fourth amendment considerations still apply. However law enforcement officers do not violate the fourth amendment by merely approaching an individual on the street or in another public place by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. *Florida v. Royer*, 460 U.S. 491, 497 (1983).

[5]This stems from the fact that the parking complaint originated with Officer Bushey's father and the contention that the officers were performing a "private" service for Bushey's father rather than a public service normally provided by police officers.

We appreciate that this consideration may have already entered into the trial court's earlier ruling. However, the court's ultimate conclusion that a *Terry* stop was appropriate rested upon the facts and circumstances observed by the officers at the time of and *immediately* before the stop, not the parking problem. Subterfuge or not, the court concluded that the officers had separate valid grounds upon which to detain Anderson. With sec. 968.24, Stats., considerations removed from this case, the trial court must now decide whether the parking problem was the true reason for the stop.

caretaker function existed, it shall then apply the balancing test prescribed herein and determine the ultimate issue as to the reasonableness of the seizure.

We therefore reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion relative to Anderson's motion to suppress. If the trial court again denies the motion to suppress, the judgment shall be reinstated. If the motion to suppress is granted, further appropriate proceedings in the trial court shall be conducted.

*By the Court.*—Judgment reversed and cause remanded.