STATE of Wisconsin, Plaintiff-Respondent,†

v.

David Paul ANDERSON, Defendant-Appellant.

Court of Appeals

*No. 88–0692–CR. Submitted on briefs February 21, 1989.— Decided March 22, 1989.*

(Also reported in 439 N.W.2d 840.)

† Petition to review granted.

665

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patricia Flood,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Christopher G. Wren,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   In *State v. Anderson,* 142 Wis. 2d 162, 417 N.W.2d 411 (Ct. App. 1987) (*Anderson I*), this court reversed a judgment of conviction entered against David Anderson and remanded for further proceedings: (1) to determine whether the police authorities were performing a bona fide community care-

taker function when they stopped Anderson's vehicle in the city of Elkhorn on May 28, 1985; and (2) if so, to apply the balancing test we set out in *Anderson I*.[1] We further directed that if the trial court, after following the directive of our remand, again denied the motion to suppress, the judgment of conviction was to be reinstated.[2]

Upon remand, the successor judge, the Honorable Robert D. Read, concluded that the seizure of Anderson's vehicle was invalid under the community caretaker function. However, Judge Read did not expressly determine whether the police action was a bona fide discharge of the community caretaker function; nor did Judge Read apply the balancing test. Instead, the judge determined that the police seizure of Anderson's vehicle was valid under *Terry v. Ohio,* 392 U.S. 1 (1968), and *State v. Baudhuin,* 141 Wis. 2d 642, 416 N.W.2d 60 (1987). *Baudhuin* was released after our decision in *Anderson I.* The *Terry* aspect of Judge Read's ruling essentially reconfirmed the reasoning underlying the initial trial court order denying Anderson's motion to suppress and which inspired the first appeal. Anderson again appeals, arguing that Judge Read failed to follow the dictates of remand in *Anderson I.*

By order dated November 23, 1988, we concluded that Judge Read had failed to comply with our remand directions. Therefore, without ruling on Anderson's appeal, we again remanded this matter to the circuit court for application of the community caretaker analy-

[1]The initial suppression ruling which was appealed in *State v. Anderson,* 142 Wis. 2d 162, 417 N.W.2d 411 (Ct. App. 1987) (*Anderson I*), was made by the Honorable James L. Carlson.

[2]Anderson was convicted of carrying a concealed weapon contrary to sec. 941.23, Stats., and possession of a firearm by a felon contrary to sec. 941.29(1) and (2), Stats.

sis set forth in *Anderson I.* We retained jurisdiction of this appeal pending further proceedings in the circuit court in compliance with this latest remand.

The proceedings required by our remands have now taken place before the third judge assigned to this case, the Honorable Robert J. Kennedy, whose findings and conclusions have been filed with this court. Judge Kennedy ruled that the police authorities were not performing a bona fide community caretaker function when they stopped Anderson's vehicle. Judge Kennedy also concluded, after applying the community caretaker balancing test, that the seizure of Anderson's vehicle was illegal.

The essential and controlling facts in this case remain those set forth in *Anderson I.* Officers Thomas Bushey and Charles Nicoud of the City of Elkhorn Police Department were patrolling an alley in the city of Elkhorn on May 28, 1985, at approximately two o'clock in the morning when they noticed Anderson's vehicle approaching their squad car. Officer Bushey had previously received complaints that Anderson's vehicle was parked in private business stalls in the area. Although Officer Bushey had run a license plate check on Anderson's vehicle a week or two earlier, he had made no previous attempt to contact Anderson about the parking problem.

Upon approaching the squad car containing the two officers, Anderson turned south into an adjoining alley, attaining a speed of approximately ten to fifteen miles per hour. He then turned onto the city streets, attaining a speed of approximately thirty miles per hour. The officers followed and activated their red and blue flashing lights. Anderson stopped immediately. After the stop, the officers turned the squad's spotlights on Anderson's vehicle.

According to Officer Bushey's testimony, Anderson was stopped because he had driven his vehicle away from the officers in the alley and because the officers wished to speak to him about the parking matter.

After the vehicle was stopped, the officers saw Anderson's arms "feverishly moving as to try to hide something underneath the seat or pull something out from underneath the seat." The officers approached the car, Officer Bushey on the driver's side and Officer Nicoud on the passenger's side. As the officers approached, Anderson's arms were still moving underneath the seat. Officer Nicoud then saw a leather object sticking out from underneath the seat. Officer Bushey ordered Anderson to place his hands on the steering wheel and then ordered Anderson out of the car and handcuffed him. Meanwhile, Officer Nicoud searched the vehicle and found an empty holster (the leather object), a loaded .22 caliber revolver, a Gerber survival knife and two steak knives. A pat-down search of Anderson revealed two multi-functional knives, a pair of handcuffs and a box of .22 caliber shells.

## *ANDERSON I* and "LAW OF THE CASE"

On this appeal, the state defends Judge Read's order denying suppression of the evidence on grounds beyond those addressed in *Anderson I.* Anderson responds that "law of the case" principles preclude any broadening of the issues on this appeal beyond the community caretaker issues contemplated by our remand in *Anderson I.*

We begin by recalling what was *not* before us in *Anderson I.*

> It is acknowledged that the police officers did not have probable cause to stop, seize or search

671

Anderson's vehicle. The state also concedes upon appeal that there was no reasonable basis for the officers to conclude that Anderson was committing, was about to commit or had committed a crime, thereby allowing a temporary stop under sec. 968.24, Stats.

Instead, the state relies upon the police "community caretaker" function to justify the officers' actions in this case.

*Anderson I,* 142 Wis. 2d at 166, 417 N.W.2d at 413 (footnote omitted). In light of this narrowing of the issues in *Anderson I,* we addressed the community caretaker implications of the case and fashioned the balancing test when a community caretaker function is asserted as justification for a seizure.[3] As noted, we remanded for application of this test.

The state defends Judge Read's reinstatement of Anderson's judgment of conviction on the grounds that the officers' actions were proper under *State v. Baudhuin,* 141 Wis. 2d 642, 416 N.W.2d 60 (1987), and *State v. Jackson,* 146 Wis. 2d 824, 434 N.W.2d 386

---

[3]This test contemplated the following determinations: "(1) that a seizure within the meaning of the fourth amendment has occurred; (2) if so, whether the police conduct was bona fide community caretaker activity; and (3) if so, whether the public need the interest outweigh the intrusion upon the privacy of the individual." *Anderson I,* 142 Wis. 2d at 169, 417 N.W.2d at 414.

> As to the last factor—weighing the public need and interest against the intrusion—relevant considerations include: (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.

*Id.* at 169–70, 417 N.W.2d at 414 (footnotes omitted).

(1989). The "law of the case" principle holds that "a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal." *Univest Corp. v. General Split Corp.*, 148 Wis. 2d 29, 38, 435 N.W.2d 234, 238 (1989).

However, the "law of the case" doctrine is not a principle to which this court is bound by any legislative enactment, nor is it a rule to be inexorably followed in every case. *Id.* at 38–39, 435 N.W.2d at 238. One well-recognized exception to its application is when intervening case law has served to change the state of the law. *See State v. Brady,* 130 Wis. 2d 443, 448, 388 N.W.2d 151, 154 (1986). Since the state's argument is that *Baudhuin* and *Jackson* represent post-*Anderson I* cases supporting Judge Read's ruling, we choose in our discretion not to apply "law of the case" principles to this appeal. We therefore address the state's *Baudhuin* and *Jackson* arguments.

## *STATE V. BAUDHUIN* and *STATE V. JACKSON*

*Baudhuin* stands for the proposition that the Fourth Amendment to the United States Constitution and art. I, sec. 11 of the Wisconsin Constitution do not prohibit the police from seizing, without a warrant, an automobile and its occupants when there is a factual basis upon which to stop the driver for a traffic violation, even though the police officer intends only to render assistance to the driver and not to issue a traffic citation. *Baudhuin,* 141 Wis. 2d at 643–44, 652, 416 N.W.2d at 60, 64. Implicit in the authority to arrest for a traffic violation is the authority to stop the vehicle

where the officer has reasonable grounds to believe the violation has occurred. *Id.* at 648, 416 N.W.2d at 62. The legality of such a stop is a question of law. *Id.; see also Village of Elkhart Lake v. Borzyskowski,* 123 Wis. 2d 185, 189, 366 N.W.2d 506, 508 (Ct. App. 1985).

Officer Bushey testified that, *in his opinion,* Anderson reached speeds of up to ten to fifteen miles per hour in an alleyway and twenty-five to thirty miles per hour in the city streets. Officer Bushey, however, acknowledged that he did not "clock" Anderson's vehicle in any conventional manner by use of radar or the police vehicle speedometer. The officer conceded that he did not have sufficient facts to warrant the issuance of a traffic citation or to conclude that Anderson was violating the law. Beyond the officer's suspicion that Anderson may have been speeding, the record is devoid of any suggestion of any traffic violation. Officer Bushey had no articulable facts to believe that Anderson was violating a traffic law under a *reasonable grounds standard. See Baudhuin,* 141 Wis. 2d at 650, 416, N.W.2d at 63. *Baudhuin* does not support the state's argument that probable or reasonable cause existed to stop Anderson's vehicle.

The state also seeks to justify the seizure of Anderson's vehicle under *State v. Jackson,* 147 Wis. 2d 824, 434 N.W.2d 386 (1989). *Jackson* is a "flight" case in which the supreme court concluded that, in appropriate circumstances, flight from a police officer can justify a warrantless investigative stop. *Id.* at 833, 434 N.W.2d at 390. This presents a *Terry* inquiry: whether the totality of the circumstances creates a reasonable suspicion that a person was committing, had committed, or was about to commit a crime. *Id.* at 833–34, 434

N.W.2d at 390; *see also Terry,* 392 U.S. at 26; sec. 968.24, Stats. Whether those facts satisfy the constitutional requirement of reasonableness presents a question of law, and therefore we are not bound by the trial court's decisions on that issue. *Jackson,* 147 Wis. 2d at 829, 434 N.W.2d at 388.

In *Jackson,* a police officer was responding to a report of a possible stabbing when he observed Jackson flee from him at approximately 2:00 a.m. The officer pursued Jackson on foot. The chase took the officer and Jackson through yards and over fences. Under these circumstances, the supreme court concluded that it was reasonable for the officer to form the suspicion that Jackson was committing, was about to commit, or had committed a crime. *Id.* at 833, 434 N.W.2d at 390–91.

In the case at bar, the officers formed the subjective belief that Anderson was engaged in "flight" or "police avoidance behavior" because he selected a route of travel in an alleyway which did not require him to pass by the police vehicle. The state argues that this justified the seizure of Anderson's vehicle.

■

We first observe that we are not bound by the officers' subjective assessment or motivation. *See Baudhuin,* 141 Wis. 2d at 651, 416 N.W.2d at 63. The fact that the officer does not have the state of mind which is hypothesized by the reasons which provide the legal justification for the officers' action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. *Id.; Scott v. United States,* 436 U.S. 128, 138 (1978). Although this rule is most commonly applied in situations where the reviewing court (trial or appellate) finds an alternative permissible basis for validating the officers' action, consistency requires that the rule also apply where the

officers' action is invalidated. The purpose of the rule is to avoid "imprisoning" the reviewing court in the subjective assessment of the officer. Whether application of the rule leads to justifying or invalidating the police action is immaterial.

Here, the *objective* facts support no "flight" or "police avoidance behavior." Anderson's route of travel was a permissible one, clearly within the rules of the road. His ensuing estimated speeds of fifteen miles per hour in the alleyway and thirty miles per hour on the highway do not, objectively viewed, support the "flight" interpretation.

Rather than constituting the requisite probable cause requirements for a valid arrest or reasonable suspicion requirements under *Terry* and sec. 968.24, Stats., the state's argument under *Baudhuin* and *Jackson* represents the "inchoate and unparticularized suspicion or 'hunch'" which will not suffice to support the seizure of a citizen. *State v. Guzy*, 139 Wis. 2d 663, 675, 407 N.W.2d 548, 554, *cert. denied*, 108 S. Ct. 494 (1987).

### *TERRY V. OHIO* and SEC. 968.24, STATS.

In *Anderson I*, we observed that "[t]he state also concedes upon appeal that there was no reasonable basis for the officers to conclude that Anderson was committing, was about to commit or had committed a crime, thereby allowing a temporary stop under sec. 968.24, Stats." *Anderson I*, 142 Wis. 2d at 166, 417 N.W.2d at 413 (footnote omitted). On this appeal, the state adheres to this concession but nonetheless argues that the seizure of Anderson's vehicle was still valid under *Terry v. Ohio*, 392 U.S. 1 (1968). In effect, the

state argues that *Terry* recognizes an area of permissible police activity allowing for a seizure beyond that codified in sec. 968.24, Stats. We disagree that *Terry* stands for this proposition.

In *Terry,* the United States Supreme Court held that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating *possibly criminal behavior* even though there is no probable cause to make an arrest." *Terry,* 392 U.S. at 22. (Emphasis added.) The Supreme Court recognized that a brief investigatory stop is a seizure and is therefore subject to the reasonableness requirement of the fourth amendment. *State v. Goebel,* 103 Wis. 2d 203, 208, 307 N.W.2d 915, 918 (1981). The Wisconsin legislature has codified the *Terry* standard in sec. 968.24, Stats., which provides in relevant part:

> **Temporary questioning without arrest.** After having identified himself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that *such person is committing, is about to commit or has committed a crime.* [Emphasis added.]

The highlighted language is the equivalent of the *Terry* Court's "possibly criminal behavior" language.

Although not engaging in the above analysis, our supreme court has "recognized that sec. 968.24 is the 'statutory expression' of the *Terry* requirements, and in interpreting the scope of the statute, resort must be made to *Terry* and the cases following it." *Jackson,* 147 Wis. 2d at 831, 434 N.W.2d at 389; *see also State v.*

*Williamson,* 113 Wis. 2d 389, 399–400, 335 N.W.2d 814, 819, *cert. denied,* 464 U.S. 1018 (1983).

The state points to certain of our language in *Anderson I* in support of its argument.[4] In this language, we noted some similarities in a community caretaker analysis and a *Terry* analysis. This observation, however, was made in the context of the *balancing test*—not in the context of determining whether a *Terry* situation existed in the first instance. The issue in this case is whether a *Terry* situation existed as a threshold matter: whether the officers had reasonable suspicion to believe that Anderson was committing, was about to commit or had committed a crime. Sec. 968.24, Stats. The balancing test has nothing to do with this inquiry.

---

[4]The language cited by the state from *Anderson I* is:

> The ultimate standard under the fourth amendment is the reasonableness of the search or seizure in light of the facts and circumstances of the case. *Bies [v. State],* 76 Wis. 2d [457,] 468, 251 N.W.2d [461,] 466 [1977]. In a community caretaker case, this requires a balancing of the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen. *Id.* at 469, 251 N.W.2d at 467. This test requires an objective analysis of the circumstances confronting the police officer, including the nature and reliability of his information, with a view toward determining whether the police conduct was reasonable and justified. *Id.* This test also requires an objective assessment of the intrusion upon the privacy of the citizen. *See United States v. Martinez-Fuerte,* 428 U.S. 543, 558 (1976). *As the state noted at oral argument, this is essentially the Terry test,* but applied in a community caretaker setting. Overriding this entire process is the fundamental consideration that any warrantless intrusion must be as limited as is reasonably possible, consistent with the purpose justifying it in the first instance. *Bies,* 76 Wis. 2d at 469, 251 N.W.2d at 467; *see Terry,* 392 U.S. at 20–21.

*Anderson I,* 142 Wis. 2d at 168–69, 417 N.W.2d at 413–14 (emphasis added, footnote omitted).

We conclude that sec. 968.24, Stats., is a full codification of the *Terry* rule. We confirm our statement in *Anderson I* that the facts of this case did not allow for a temporary stop under sec. 968.24.

## COMMUNITY CARETAKER

This brings us to a review of Judge Kennedy's application of the community caretaker function as mandated by our remands. The issue before us is one of historical fact and constitutional fact. On review of a denial of a suppression motion, we will uphold the trial court's findings of historical fact unless they are against the great weight and clear preponderance of the evidence. *Jackson*, 147 Wis. 2d at 829, 434 N.W.2d at 388. This is the equivalent of the "clearly erroneous" test set forth in sec. 805.17(2), Stats. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). Whether those facts satisfy the constitutional requirement of reasonableness presents a question of law, and therefore we are not bound by the trial court's decisions on that issue. *Jackson*, 147 Wis. 2d at 829, 434 N.W.2d at 388.

The state challenges a number of Judge Kennedy's factual determinations. Judge Kennedy found that "Anderson's car didn't appear to have been fleeing from them, or anything like that." The state argues that the finding is erroneous because the evidence reveals that the officers *believed* Anderson was seeking to evade contact with them. We have already analyzed the evidence on this question and concluded that, objectively viewed, it does not establish a traffic offense or flight.

Moreover, the state's argument seeks to bind the trial court to the opinion testimony of the officers. This argument overlooks the fact-finding role of the judge in this setting and, particularly, the fact finder's responsibility to assess the reliability, weight and credibility to be given to the witnesses' testimony. *See* sec. 805.17(2), Stats. Judge Kennedy's conclusion that Anderson's driving pattern did not warrant police interference is a *conclusion* which the trier of fact was entitled to draw from the record. We are obligated to give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.*

Judge Kennedy's findings are premised, at least in part, upon his assessment of the witnesses' credibility and reliability. Given Judge Kennedy's advantage over us in this regard, we properly accord his determinations due deference. The findings of fact and the inferences drawn from the testimony made by Judge Kennedy are not clearly erroneous.

Next, the state takes issue with Judge Kennedy's determination that the police officers were not performing a bona fide community caretaker function at the time of the seizure and that the seizure "was not for the purpose of resolving a citizen complaint."

Among the determinations to be made in a community caretaker analysis is whether the police conduct was *bona fide* community caretaker activity. *Anderson I,* 142 Wis. 2d at 169, 417 N.W.2d at 414. In our initial remand in *Anderson I,* we noted Anderson's argument that "the parking complaint originated with Officer Bushey's father and the contention that the officers were performing a 'private' service for Bushey's father

rather than a public service normally provided by police officers." *Id.* at 170 n. 5, 417 N.W.2d at 414.

Here again, resolution of this issue draws upon the trial court's assessment of the credibility of the various witnesses. Findings based upon such assessments will not be disturbed unless clearly erroneous. Sec. 805.17(2), Stats. The trial court's determination that the officers were not performing a bona fide community caretaker function is not clearly erroneous. This finding alone resolves the community caretaker issue in this case.

However, Judge Kennedy's findings and conclusions went further, for the judge also performed the balancing test, assuming the police action was a bona fide community caretaker function. Specifically, Judge Kennedy considered whether the public need and interest outweighed the intrusion upon the privacy of the individual. *See Anderson I,* 142 Wis. 2d at 169, 417 N.W.2d at 414. On this question, Judge Kennedy determined that there was prior ample opportunity for the private parking matter to have been pursued short of the seizure of Anderson's vehicle under the circumstances here.

The first factor to be considered in this balancing test is the degree of the public interest and exigency of the situation. *Id.* A private parking/trespassing dispute certainly carries a legitimate public and police interest. However, it does not, under the facts of this case, constitute any violation of the law. As such, it necessarily falls on the low end of the "public interest" and "exigency" scale. *See id.* This factor weighs against the legality of the officers' actions.

681

The second factor in the balancing test is the attendant circumstances surrounding the seizure, including time, location, and the degree of overt authority and force displayed. *Id.* The seizure here was accomplished by two police officers at two o'clock in the morning on a city street by means of the police vehicle's flashing lights. As we have already noted, the officer conceded that he did not have sufficient facts to warrant the issuance of a traffic citation or to conclude that Anderson was violating the law. In addition, we have objectively concluded that the facts support this concession. Under such facts, the individual's interest in proceeding about his business unfettered by police interference is heightened. *Id.* at 169 n. 3, 417 N.W.2d at 414. This second factor, we conclude, weighs against the legality of the police action.

The third factor in the balancing test is whether an automobile is involved. *Id.* at 169, 417 N.W.2d at 414. Here, the seizure involved an automobile. This factor weighs in favor of the legality of the seizure.

The fourth factor in this test requires consideration of the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished. *Id.* at 170, 417 N.W.2d at 414. As noted, Judge Kennedy determined that there was prior ample opportunity for the private parking matter to have been pursued short of the seizure of Anderson's vehicle. The state does not dispute that these alternatives were available. Rather, the state argues that the alternatives were as, or more, intrusive than those involved here. The state argues that if the officers had appeared at Anderson's home, "where a person enjoys the greatest right or privacy and protection against the intrusion of the state," a greater intrusion would have occurred than

682

the "serendipitous encounter on a public street" which occurred here. We disagree.

While the state correctly notes the special status reserved for a residence, it overlooks that, as with most citizen-police contacts, such an encounter would not constitute a seizure under the fourth amendment. The instant case, however, does involve a seizure and thus the fourth amendment is implicated. *Id.* at 167, 417 N.W.2d at 413.

■

Whether the issue be one under community caretaker or *Terry,* the test is reasonableness, and we must take into account the facts and circumstances of each individual case. *Jackson,* 147 Wis. 2d at 831, 434 N.W.2d at 389; *Anderson I,* 142 Wis. 2d at 168, 417 N.W.2d at 413. Reasonableness requires us to weigh the societal interest involved against the specific intrusion on personal liberty. *See Jackson,* 147 Wis. 2d at 831, 434 N.W.2d at 389. Given the relatively minor nature of the societal interest and the alternatives available short of seizure to pursue the matter, we agree with Judge Kennedy's determination that the seizure of Anderson's vehicle was unreasonable. Therefore, we reverse the order reinstating Anderson's judgment of conviction and remand for further proceedings with directions to grant the motion to suppress.

*By the Court.*—Order reversed and cause remanded.