**PROVO CITY, Plaintiff and Appellee,**

v.

**Brent Roland WARDEN, Defendant and Appellant.**

**No. 910634–CA.**

Court of Appeals of Utah.

Dec. 9, 1992.

---

Thomas H. Means (argued), Aldrich, Nelson, Weight & Esplin, Provo, for defendant and appellant.

Gary Gregerson, Provo City Atty., and Vernon F. (Rick) Romney, Deputy Provo City Atty. (argued), Provo, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

GREENWOOD, Judge:

Defendant Brent Warden appeals his conviction of driving under the influence of alcohol, a class B misdemeanor, in violation of Provo City Ordinance section 9/41-6-44. Warden challenges both the trial court's denial of his motion to suppress and its guilty verdict. We affirm.

## BACKGROUND

At about 2:00 a.m. on the morning of May 9, 1991, Officer Jensen of the Provo City Police Department was on patrol. As he drove through a Denny's Restaurant parking lot, two men approached his car. They told the officer that a male had just asked them where he could buy some cocaine so he could "drive himself into a wall." The men described the car which the male was driving and supplied Officer Jensen with the license plate number. They also told him that the male was probably heading towards downtown Provo. The men then immediately returned to their car and drove away. Officer Jensen broadcast the vehicle description and plate number to all other units in an attempt to locate the male driver, and then left the parking lot to look for the driver himself. He drove towards downtown Provo and spotted the car on University Avenue. Officer Jensen made a U-turn to come in behind the vehicle and followed it for approximately a block and a half. The male driver made a left turn and traveled at a normal rate of speed. Officer Jensen flashed his lights and the car stopped.

After stopping the car, Officer Jensen approached Warden, the car's driver, and asked him for his driver's license and registration. After observing Warden, the officer noted that his breath smelled of alcohol and that he was unsteady on his feet. On that basis, Officer Jensen administered a standard battery of field sobriety tests. When Warden failed to satisfactorily complete the tests, Officer Jensen arrested him for driving under the influence. Officer Jensen transported Warden to the police station where an intoxilyzer test recorded a .08 percent blood alcohol content.

At trial, Officer Jensen testified that the only basis he had for the traffic stop was the information provided by the two unidentified men. According to the officer, he was concerned about the "person's mental stability and welfare on his own behalf." Upon the court's own questioning, the reason for the stop was further clarified:

The Court: Any other reason at all for the stop?

Officer Jensen: Basically, the stop—I was concerned for this person's welfare and mental stability.

The Court: It was a welfare stop in your view?

Officer Jensen: In my view, yes, it was a welfare stop for this person. It—at the time that I made the stop, I wasn't basing the stop on a DUI stop, that's what it later turned up to be; but I was basing the stop on a welfare check for this individual's wellbeing.

Although the court noted that there was no reasonable suspicion that Warden was

engaged in criminal activity when Officer Jensen stopped him, it denied Warden's motion to suppress the evidence seized as a result of the stop. The court ruled that when a police officer receives unverified information that a person is about to harm him or herself and makes a "welfare stop" based upon that information, the officer is entitled to proceed with an arrest based upon evidence of crimes discovered during the welfare stop. The court found Warden guilty and this appeal followed.

## ISSUES

The central question presented on appeal is one of first impression in Utah: Are law enforcement officers authorized to make "welfare" stops of citizens? If so, under what circumstances will such stops be lawful? Warden also claims on appeal that the trial court erred in considering inadmissible hearsay evidence.

## STANDARD OF REVIEW

"In absence of clear error, the trial court's findings of fact underlying its decision to grant or deny the suppression motion must be upheld." *State v. Steward*, 806 P.2d 213, 215 (Utah App.1991) (citation omitted); *State v. Hunter*, 831 P.2d 1033, 1033 (Utah App.1992), *cert. denied*, 843 P.2d 1042 (Utah 1992). "However, as for the trial court's legal conclusions in regards thereto, the correction of error standard applies." *Steward*, 806 P.2d at 215 (citation omitted).

## ANALYSIS

### Community Caretaker Stops

■ The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The right to be free from unreasonable searches and seizures extends to a person's automobile. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *see also State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989) ("Although a person has a less-

er expectation of privacy in a car than in his or her home, one does not lose the protection of the Fourth Amendment while in an automobile."). The Fourth Amendment is "implicated ... because stopping an automobile and detaining its occupants constitute a 'seizure' ... even though the purpose of the stop is limited and the resulting detention quite brief." *Prouse*, 440 U.S. at 653, 99 S.Ct. at 1396. "Thus, the Fourth Amendment prohibits police officers from randomly or arbitrarily stopping vehicles on the highway." *State v. Lopez*, 831 P.2d 1040, 1043 (Utah App.1992) (citing *Prouse*, 440 U.S. at 654–56, 99 S.Ct. at 1396–98), *cert. granted*, 843 P.2d 1042 (Utah 1992).

■ Specific situations in which police officers are justified in making stops of citizens in their vehicles include the following:

(1) When the officer observes the driver commit a traffic violation;

(2) when the officer has a reasonable articulable suspicion that the driver is committing a traffic offense, such as driving under the influence of alcohol or driving without a license; and

(3) when the officer has a reasonable articulable suspicion that the driver is engaged in more serious criminal activity, such as transporting drugs.

*Lopez*, 831 P.2d at 1043 (citations omitted); *see also State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987) (describing three levels of police-citizen encounters requiring different degrees of justification under the Fourth Amendment). An officer's reasonable articulable suspicion must be based upon objective facts apparent to the officer at the time of the stop. *State v. Roth*, 827 P.2d 255, 257 (Utah App.1992). "Whether there are objective facts to justify such a stop depends on the 'totality of the circumstances.'" *State v. Holmes*, 774 P.2d 506, 508 (Utah App.1989) (quoting *State v. Mendoza*, 748 P.2d 181, 183 (Utah 1987)).

Utah appellate case law has not yet addressed, however, the legitimacy of police vehicle stops unrelated to a penal or regulatory purpose. Therefore, the trial court's recognition of the stop of Warden's vehicle

as lawful because it was prompted by a concern for Warden's welfare, presents an issue of first impression in Utah. Because Utah law provides no guidance on the propriety of such stops, we look to other jurisdictions on this issue.

One of the first cases to enunciate a standard for police stops to assist motorists, unrelated to penal or regulatory purposes, was *United States v. Dunbar*, 470 F.Supp. 704 (D.Conn.), *aff'd*, 610 F.2d 807 (2nd Cir.1979). In this case, an officer stopped a motorist after observing that the license plate was from a neighboring state and deducing from the manner in which the driver was proceeding that he was lost.

Preliminarily, the court noted that "there is no basis for resolving this dispute without reference to the standards of the Fourth Amendment." *Id.* at 706. The court determined that defendant was seized: "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of the Fourth and Fourteenth Amendments, even though the purpose of the stop is limited and the resulting detention is quite brief." *Id.* (quoting *Prouse*, 440 U.S. at 648, 99 S.Ct. at 1393). The Fourth Amendment's requirement of reasonableness is analyzed by weighing the individual's right to personal security against the public interest. *Id.*

In assessing the weight to be assigned the public interest, *Dunbar* discussed the privacy intrusions which police commit in furtherance of "community caretaking functions." *Id.* at 707.[1] *Dunbar* applied the community caretaking concept to vehicle stops, reasoning that "[i]t would be too extravagant to contend that a benign purpose of rendering assistance could never justify the stop of a motorist." *Id.* at 707. The court ultimately held, however, that under the facts before it, the balancing between the legitimate governmental interest in aiding a motorist and an individual's right to be free from arbitrary interferences from law enforcement officers weighed in favor of the individual. "The Fourth

Amendment stands against initiating a new line of cases in which the officer says, 'I thought he was lost.'" *Id.* at 708.

Other jurisdictions have utilized the balancing test set forth in *Dunbar* with varying results. None, however, has explicitly rejected the notion that community caretaker concerns can justify stops and seizures under appropriate circumstances. For example, some courts discuss the need for a specific set of circumstances which are "beyond the ordinary, though not necessarily criminally suspicious" to justify an officer's stop of a vehicle. *State v. Goetaski*, 209 N.J.Super. 362, 507 A.2d 751, 752–3 (1986), *cert. denied*, 104 N.J. 458, 517 A.2d 443 (1986) (driving slowly on the shoulder of the road at 4:00 a.m. with left-turn signal blinking, was unusual enough circumstance to warrant the stop, but barely passed constitutional muster); *see also McDougal v. State*, 580 So.2d 324, 325 (Fla.Ct.App.1991) (stopping driver to inform him of how to retrieve confiscated firearms is not a justified circumstance); *State v. Parker*, 127 N.H. 525, 503 A.2d 809, 812 (1985) (justifying the stop of a driver of truck and camper when officer saw a child's head duck behind curtains in camper while parked in dark parking lot); *State v. Chisholm*, 39 Wash.App. 864, 696 P.2d 41, 43 (1985) (validating a police officer's momentary stop of a vehicle to warn the occupants that an item of their property was endangered); *Russell v. Municipality of Anchorage*, 706 P.2d 687, 689 (Alaska Ct.App.1985) (upholding a stop where a misted rear window could cause traffic hazards); *Crauthers v. State*, 727 P.2d 9, 11 (Alaska Ct.App.1986) (authorizing officer checking on a driver stopped near side of road with his window rolled down when officer reasonably construed situation to be a request for assistance); *but see, Ozhuwan v. State*, 786 P.2d 918, 922 (Alaska Ct.App.1990) (invalidating check on two cars parked together in a campground because circumstances did not support a reasonable belief that the occupants of the vehicles needed assistance).

---

**1.** Community caretaking functions were defined in *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973), as "to-

tally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."

Wisconsin articulated a detailed methodology for determining when a police stop of a vehicle is justified as a community caretaker activity in *State v. Anderson*, 142 Wis.2d 162, 417 N.W.2d 411 (App.1987), *rev'd on other grounds*, 155 Wis.2d 77, 454 N.W.2d 763 (1990). Police officers had stopped a car at 2:00 a.m. which was thought to have parked on prior occasions in private business stalls in the area. The state conceded there was no reasonable basis to suspect the driver of criminal activity. In *Anderson*, that court noted that a test for such police stops "requires an objective analysis of the circumstances confronting the police officer, including the nature and reliability of his [or her] information, with a view toward determining whether the police conduct was reasonable and justified." *Id.* 417 N.W.2d at 413. If a community caretaker function is asserted as justifying a stop,

> [t]he trial court must determine: (1) that a seizure within the meaning of the fourth amendment has occurred; (2) if so, whether the police conduct was bona fide community caretaker activity; and (3) if so, whether the public need and interest outweigh the intrusion upon the privacy of the individual.

*Id.* at 414. When the trial court addresses the third factor and weighs the public need and interest against the individual's privacy intrusion, *Anderson* notes that the following are relevant considerations:

> (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.

*Id.*

After remand to the circuit court for application of the enunciated criteria, a second appeal ensued. *State v. Anderson*, 149 Wis.2d 663, 439 N.W.2d 840, 846 (App. 1989) (*Anderson II*). In *Anderson II*, the court of appeals stated that the trial court's findings of fact, referred to as his-

torical facts, would be upheld unless they were against "the great weight and clear preponderance of the evidence." *Id.*, 439 N.W.2d at 846. The court further noted that "[w]hether those facts satisfy the constitutional requirement of reasonableness presents a question of law, and therefore we are not bound by the trial court's decisions on that issue." *Id.* at 847. The court concluded that in this case, "[g]iven the relatively minor nature of the societal interest and the alternatives available short of seizure to pursue the matter ... the seizure of Anderson's vehicle was unreasonable." *Id.* at 848.

■ Having reviewed case law addressing automobile stops which are outside the penal and regulatory framework, we believe that adopting a test describing the criteria for community caretaker automobile stops is appropriate for the development of Utah's Fourth Amendment law. We therefore adopt a three tiered test—modeled in part on Wisconsin's *Anderson* test—to determine if a stop is reasonable, and, therefore, lawful under the Fourth Amendment. The trial court must evaluate the legitimacy of an alleged community caretaker stop as follows: First, did a seizure occur under the Fourth Amendment definition of that term? Second, based upon an objective analysis, was the seizure in pursuit of a bona fide community caretaker function—under the given circumstances, would a reasonable officer have stopped a vehicle for a purpose consistent with community caretaker functions? Third, based upon an objective analysis, did the circumstances demonstrate an imminent danger to life or limb? *See Lopez*, 831 P.2d at 1046 (describing reasonable officer standard). Our test differs from the *Anderson* test in that we require circumstances threatening life or safety, rather than using exigent situations as merely a factor in a mix of considerations.

In adopting this test, we expressly disavow the reasoning in those cases which have upheld motorist stops when an insignificant article of the driver's personal property was endangered or when a motorist appeared to be lost in less than life-

threatening circumstances. While these instances may represent legitimate community interests, they are entitled to slight weight as compared to the protection of the Fourth Amendment. Instead, we adopt the requirement of imminent danger to life or limb as a component of the reasonableness test because of the Fourth Amendment's guarantee of "the right of the people to be secure" against arbitrary invasions by the government. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 242, 93 S.Ct. 2041, 2055–56, 36 L.Ed.2d 854 (1973).

We also note that stops which are legitimate exercises of police community caretaker responsibilities, but which are not "reasonable" under the Fourth Amendment, may result in application of the exclusionary rule, while still achieving the objectives of community caretaking. This appears to be a legitimate means of encouraging genuine police caretaking functions while deterring bogus or pretextual police activities.

### Test as Applied to this Case

■ The trial court upheld the validity of this stop as one for defendant's own welfare, stating that there was no independent reasonable suspicion to otherwise validate the seizure appealed by Warden under the Fourth Amendment.[2] We conclude that the stop of Warden's vehicle was permissible under our community caretaker test and that the trial court did not err in denying the motion to suppress.

Addressing the first prong of the test, Provo City concedes that Warden was seized under the Fourth Amendment definition of that term when the officer stopped his car. Second, based on an objective standard, we agree with the trial court that a reasonable police officer would have stopped Warden to help him because prevention of a suicide is consistent with an officer's community caretaker function. The officer was not acting within his duties of detection, investigation, or acquisition of evidence relating to the commission of crimes. Therefore, we determine that the officer was acting within a bona fide community caretaker function. Third, under our test the circumstances must have posed an imminent danger to life or limb, as determined by an objective standard. The unidentified men who informed the officer that Warden was threatening to harm himself created a reasonable basis upon which the officer could conclude that Warden was in imminent danger. Further, because it was late at night and the information given the officer suggested an immediate threat to Warden's physical safety or life, it was not reasonable to pursue an alternative means or to take time to try to verify the information other than by immediately locating Warden.

### Out of Court Statements

■ Warden also argues that the trial court erred in admitting the unidentified men's statements regarding Warden's intention to harm himself. Officer Jensen testified that the men told him the driver of a white Pontiac had asked them where he could buy some coke so he could drive into a wall. Warden characterizes the admission of these statements as consideration of unreliable hearsay statements in violation of Utah Rules of Evidence 801 and 802. Warden analogizes these statements to those of citizen informants in search warrant cases. He complains that there is no independent indicia of reliability for statements from unidentified citizens. The trial court, however, admitted these statements as evidence of verbal acts, and not for their substantive truth. The court limited the statements' use to evaluating the manner in which a reasonable officer would respond given this information.

We review a trial court's decision to admit evidence as a question of law under a correctness standard. *See State v. Ramirez,* 817 P.2d 774, 781 n. 3 (Utah 1991). We conclude the court correctly limited the admission of the unidentified males' statements to explain the conduct of the police officer. The statements were used to ex-

---

**2.** The facts are undisputed as to what happened prior to Officer Jensen's detention of Warden, as only the officer testified.

plain the officer's belief that the circumstances were exigent, requiring him to take action for Warden's safety. *See State v. Collier,* 736 P.2d 231, 234 (Utah 1987) (officer's testimony as to conversation with confidential informant was not hearsay because admitted to explain police conduct); *accord Layton City v. Noon,* 736 P.2d 1035, 1039 (Utah App.1987) (officer's testimony regarding conversation with store clerk was not hearsay because admitted to explain police conduct). Because the evidence of the statements was offered for a purpose other than to prove the truth of the matters stated, it was not hearsay and was not excludable as such. Utah R.Evid. 801(c); *see Durfey v. Board of Educ.,* 604 P.2d 480, 485 (Utah 1979) (evidence of utterances offered for purpose other than to prove truth of matter stated is not excludable hearsay). Therefore, the court did not err in admitting evidence of the out of court statements.

## CONCLUSION

In conclusion, we reiterate the three tiered test for community caretaker automobile stops in Utah. First, the trial court must determine if a seizure occurred under the Fourth Amendment. Second, the court must determine whether the seizure was in pursuit of a bona fide community caretaker function. Third, the court must ascertain whether the circumstances were such that there was a reasonable belief that the circumstances posed an imminent danger to life or limb. Under this community caretaker stop analysis, the officer's stop of Warden was lawful and there was no error in refusing to suppress the evidence of criminal activity seized as a result of that stop. Finally, the admission of testimony of the unidentified males' statements, explaining the officer's conduct under these circumstances, was not error. Accordingly, we affirm the trial court's ruling denying Warden's motion to suppress evidence and affirm his conviction.

BILLINGS and ORME, JJ., concur.