[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION.
Please note: we have sua sponte removed this case from the accelerated docket.
On March 13, 1998, at about 2:00 a.m., two Cincinnati police officers in a squad car observed defendant-appellee William A. King driving a vehicle slowly in a restaurant's parking lot. The officers turned around and followed King, who by then had left the parking lot and was driving on the street. King drove at about five miles per hour. The officers followed him for two to three blocks and observed several other vehicles pass him as he continued to drive at a slow pace. Finally, the officers turned on the squad car's lights and stopped him. They cited him for violating a city ordinance that prohibits drivers from "operat[ing] a vehicle at such a slow speed as to impede or block the reasonable movement of traffic * * *."[1] They also detected an odor of alcohol and observed that he had bloodshot eyes and slurred speech. He was then cited for driving under the influence of alcohol and for driving with a prohibited breath-alcohol content.
King claimed that he had been driving slowly because he was trying to locate a building where he was scheduled to have a job interview the next day. He pleaded not guilty to the charges and filed a motion to suppress the evidence obtained during the traffic stop. In response, the state argued that the officers had reasonable and articulable suspicion that a traffic violation had occurred and, thus, that the traffic stop was reasonable. The trial court held that the officers did not have reasonable and articulable suspicion to make the stop and granted the motion to suppress.
The state now appeals the court's decision, certifying that this matter can not proceed without the suppressed evidence.[2]
On appeal, the state — which admitted that King did not impede or block the reasonable movement of traffic — now concedes that the officers did not have reasonable and articulable suspicion to stop him. The state now argues that the officers stopped him only because they were concerned that he was lost or having car trouble. It claims that the traffic stop was not a seizure because the officers were only attempting to give assistance to King when they stopped him. According to the state, the stop did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. We disagree.
To begin, the state is incorrect in arguing that King's traffic stop was not a seizure. In support of its position, the state cites State v. Boys, a case where this court held that there was not a seizure when police officers approached an individual in a parked vehicle.[3] But this case involved a moving vehicle, a key distinction. Any time the driver of a moving vehicle is ordered to stop and is detained, even briefly, there is a seizure governed by the Fourth Amendment.[4] Here, it is undisputed that the officers used their squad-car lights to pull King over and, thus, ordered him to stop and detained him.[5]
The real issue is whether the stop was reasonable. A general principle of law is that a routine traffic stop will be considered a reasonable seizure if police officers have reasonable and articulable suspicion that a traffic violation has occurred.[6] Here, the state offers a unique argument that reasonable and articulable suspicion was not needed because the officers merely stopped King to help him. This issue has not been addressed in any Ohio cases that we have found. But it has been discussed in other jurisdictions.
The lead case regarding the validity of traffic stops merely to render assistance is United States v. Dunbar.[7] That case involved a police officer who made a traffic stop because he believed that the driver was lost. The court held that the stop was not reasonable under the Fourth Amendment. In coming to this holding, the court analyzed the governmental interests in making the stop. It concluded that the government's interests were "entitled to extremely slight weight" because "the interest in aiding the motorist, for his own benefit * * *, can in most situations be as well served by having the police officer make his presence known and leaving to the motorist the decision as to whether to stop and seek directions."[8] The court then balanced the government's interests with the driver's privacy interests and concluded that the privacy interests prevailed.[9] The court recognized that there might be certain instances where police might be justified in making traffic stops merely to give aid. But the court also concluded that the balance generally needed to be tipped in favor of the drivers. Otherwise, the court explained, there might be future abuses by the police — cases where police claims of making traffic stops to give assistance would really be pretexts for illegitimate motives.[10]
We agree with the Dunbar court's reasoning. For cases where police officers claim that they have made traffic stops merely to give aid, we will be very hesitant to favor the government's interests over the driver's privacy interests. But we can envision cases where a seizure would be reasonable. The court inDunbar, for instance, gave the example of "stopping a motorist to inform him that a bridge beyond a bend in the road had just been washed away."[11] Other examples might include cases where the police reasonably believe that drivers are seriously ill or falling asleep.[12] In such cases, governmental interests in safety would prevail.
We recognize that this issue presents difficulties. It forces us to attempt to analyze the subjective motivations of the police. Because we can not read minds, we can only analyze the circumstances surrounding the traffic stops. Thus, we adopt the following factors that trial courts should objectively consider in cases such as this one: (1) the legitimacy of the reasons given by the police for making the traffic stop and the degree of the public interest involved, (2) the attendant circumstances surrounding the seizure, including the exigency of the situation, and the time, location, and degree of the overt authority and force displayed, and (3) the availability and effectiveness of alternatives to the type of intrusion that actually occurred.[13]
Here, the state claims that the officers stopped King because they were concerned that he was lost or having car trouble. There was no evidence, though, that the officers had any reason for concern either for King's safety or for the safety of individuals in other vehicles because of King's slow driving. Like in Dunbar, we conclude that the officers could just have easily made their presence known and let King decide whether he wanted to stop and ask for directions or help. We also stress that testimony at the suppression hearing contradicts the state's claim that the officers only wanted to help King. At the suppression hearing, one of the officers admitted that, when he initially observed King in the parking lot, he thought, among other possibilities, that King "was there to break in to the building." The officer later reiterated that he turned around to follow King because he believed it possible that King was engaged in illegal activity. Also, the officers' actions reveal that they were not necessarily interested in helping King: if they were only concerned that he might be lost or having car trouble, they would not have given him a ticket for operating his vehicle too slowly.
In short, the state has attempted to avoid the reasonable-and-articulable-suspicion requirement for traffic stops by claiming that the officers stopped King merely because they wanted to help him. Even if the officers really had stopped King because they believed that he was lost or having car trouble, there were no exigent circumstances, and valid alternatives to a traffic stop existed. Thus, the stop was not reasonable under the Fourth Amendment, and the state's assignment is overruled.
Therefore, we affirm the trial court's conclusion that the officers did not have reasonable and articulable suspicion to stop King. We also reject the state's argument that the traffic stop was reasonable because the officers merely stopped King to help him.
Judgment affirmed.
 Gorman, P.J., and Sundermann, J., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Opinion.
[1] Cincinnati Traffic Code 506-12.
[2] See Crim.R. 12(J).
[3] State v. Boys (June 26, 1998), Hamilton App. Nos. C-970556 and C-970557, unreported.
[4] Delaware v. Prouse (1979), 440 U.S. 648, 653,99 S.Ct. 1391, 1396; United States v. Dunbar (D.Conn. 1979),470 F. Supp. 704, 706, affirmed (C.A. 2, 1979), 610 F.2d 807.
[5] See State v. Lucas (Sept. 18, 1991), Hamilton App. Nos. C-900708 and C-900709, unreported ("when the police display their authority by turning on their lights and sirens, we hold that the trial court could conclude that a reasonable person would not feel free to disregard the signal by the police to stop").
[6] Whren v. United States (1996), 517 U.S. 806, 810,116 S.Ct. 1769, 1772; State v. Chatton (1984), 11 Ohio St.3d 59, 61,463 N.E.2d 1237, 1239.
[7] Dunbar, supra.
[8] Id. at 707.
[9] Id. at 708.
[10] Id. at 707-708.
[11] Id. at 707.
[12] 4 LaFave, Search and Seizure (1996) 28, Section 9.2(b).
[13] See State v. Anderson (1987), 142 Wis.2d 162, 169-170,417 N.W.2d 411, 414.