**STATE of Iowa, Appellee,**

v.

**Kenny Dean CRAWFORD, Appellant.**

No. 02–0105.

Supreme Court of Iowa.

April 2, 2003.

Eric D. Tindal of Nidey, Peterson, Erdahl & Tindal, P.L.C., Williamsburg, for appellant.

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, and Barbara A. Edmondson, County Attorney, for appellee.

LAVORATO, Chief Justice.

Kenny Dean Crawford appeals following his conviction and sentence for operating while intoxicated, second offense. He contends the district court erred in denying his motion to suppress. Crawford's specific complaint is that the court erred by finding that an otherwise unconstitutional stop was constitutional by applying the community caretaking exception to the Fourth Amendment. Finding no error, we affirm.

## I. Background Facts and Proceedings.

In the early morning hours of April 1, 2001, City of Washington Police Officer Chad Ellis received a call from the dispatcher at the Washington County Law Center. The dispatcher informed the officer that a Patricia Quintanilla had called from her apartment at 1302 North Second Street in Washington, Iowa. According to

the dispatcher, Quintanilla was complaining that a male subject in her apartment "had taken some pills, woken up, was becoming physically aggressive towards [her] and was yelling and shouting." Quintanilla identified the male subject as David Butterbaugh. She also told the dispatcher that Butterbaugh did not know where he was and that he wanted a police officer to come and take him home. Officer Ellis knew Butterbaugh but did not know Quintanilla.

En route to Quintanilla's apartment, Officer Ellis received a second call from the dispatcher informing him that Quintanilla had again called and said that David Butterbaugh had just left in a dark Ford flatbed truck.

As Officer Ellis was heading to Quintanilla's apartment, he noticed a vehicle that matched the description of the truck. The officer followed the truck and eventually activated his overhead lights. The truck proceeded for a block and a half and then pulled off to the side of the road. At the time of the stop, it was close to 5:00 a.m. and there was very little traffic on the road.

As Officer Ellis approached the truck, he did not recognize the driver. He did recognize Butterbaugh, who was sitting in the passenger seat. The driver identified himself to the officer as Kenny Crawford.

The officer told Crawford about the report and that he wanted to talk to Butterbaugh to make sure "everything was okay." At this point Crawford left the vehicle, contrary to the officer's command to remain seated. Crawford went back to the officer's patrol car and the officer followed him. When the two were back at the patrol car, the officer smelled an odor of alcohol, at which point the officer began investigating Crawford for operating while intoxicated. During that investigation, Crawford admitted he had been drinking

and submitted to a preliminary breath test that registered over the legal limit. Crawford, however, refused to perform any further sobriety tests.

The State charged Crawford with operating while intoxicated, second offense. Crawford moved to suppress "any of defendant's statements or products of the search of defendant or of defendant's vehicle." Crawford alleged the search was in violation of the Fourth Amendment because the officer did not have "a specific and articulable [suspicion] to support a reasonable belief that criminal activity may have occurred." The district court denied the motion.

The district court agreed with Crawford that Officer Ellis did not have a reasonable and articulable suspicion to believe that a crime had occurred when the officer stopped the truck. However, the court concluded that the officer was engaged in a legitimate community caretaking function when he stopped the truck, which the court concluded was permissible under the Fourth Amendment.

At the bench trial of the operating-while-intoxicated charge, the district court received into evidence a booking tape and a deposition of Officer Ellis. In addition, the parties stipulated that the court could consider the minutes of testimony in reaching its decision. The court found Crawford guilty and sentenced him to thirty days in the county jail.

## II. Issue.

Crawford contends the district court erred by finding that an otherwise unconstitutional stop in violation of the Fourth Amendment was constitutional by applying a community-caretaking-function exception.

### III. Scope of Review.

██ Because Crawford raises a constitutional challenge, our review is de novo. *State v. Turner,* 630 N.W.2d 601, 606 (Iowa 2001). In our review we " 'make an independent evaluation of the totality of the circumstances as shown by the entire record.' " *Id.* (citation omitted). We consider both the evidence presented during the suppression hearing and that introduced at trial. *State v. Breuer,* 577 N.W.2d 41, 44 (Iowa 1998). We give "deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but are not bound by those findings." *Turner,* 630 N.W.2d at 606.

### IV. Community Caretaking Function.

██ **A. Applicable law.** The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. . . ." U.S. Const. amend. IV.. The Fourth Amendment, which is made applicable to the states through the Fourteenth Amendment, gives citizens broad protection against warrantless searches and seizures. *State v. Brecunier,* 564 N.W.2d 365, 367 (Iowa 1997). "The purpose of this protection is to safeguard the privacy and security of individuals against arbitrary intrusion by government officials." *Id.*

██ Subject to a few carefully drawn exceptions, warrantless searches are per se unreasonable. *State v. Carlson,* 548 N.W.2d 138, 140 (Iowa 1996). Evidence obtained in violation of the Fourth Amendment is inadmissible unless the state proves by a preponderance of the evidence that a recognized exception to the warrant requirement applies. *Id.*

One of the exceptions to the warrant requirement is that formulated in *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714–15 (1973). In that case, the Court held that a search of the trunk of a disabled car was not unreasonable under the Fourth Amendment even though done without a warrant. *Id.* at 446–48, 93 S.Ct. at 2530–31, 37 L.Ed.2d at 717–19. In reaching that conclusion, the Court explained that local police officers, unlike federal officers, frequently "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 714–15. In addition, the Court explained "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." *Id.* at 447, 93 S.Ct. at 2531, 37 L.Ed.2d at 718.

One writer has asserted that the community caretaking exception encompasses three separate doctrines: (1) the emergency aid doctrine, (2) the automobile impoundment/inventory doctrine, and (3) the "public servant" exception noted in *Cady.* Mary E. Naumann, *The Community Caretaker Doctrine: Yet Another Fourth Amendment Exception,* 26 Am. J.Crim. L. 325, 330–41 (1999) [hereinafter "Naumann"].

Here only the first and third doctrines— emergency aid and public servant—are relevant. The two doctrines, however, are closely related. *See id.* at 333. According to Naumann,

> only a narrow distinction separates the emergency aid doctrine from the public servant exception. Under the emergency aid doctrine, the officer has an imme-

diate, reasonable belief that a serious, dangerous event is occurring.... [I]n contrast, the officer in a public servant situation might or might not believe that there is a difficulty requiring his general assistance. For example, an officer assists a motorist with a flat tire under the public servant doctrine, but an officer providing first aid to a person slumped over the steering wheel with a bleeding gash on his head acts pursuant to the emergency aid doctrine.

*Id.* at 333–34. *See also State v. Mireles,* 133 Idaho 690, 991 P.2d 878, 880 (Ct.App. 1999) ("The community caretaking function involves the duty of police officers to help citizens an officer reasonably believes may be in need of assistance.").

We have applied the community caretaking exception in several cases. *See., e.g., State v. Moore,* 609 N.W.2d 502, 503–04 (Iowa 2000) (holding that although there was no evidence of a criminal violation, a park ranger had authority and duty based upon public safety and speed statute to stop defendant's vehicle in order to warn him that his speed posed a danger to park campers); *State v. Carlson,* 548 N.W.2d 138, 142–43 (Iowa 1996) (holding that officer's entry into a home to investigate a missing person's report, where defendant gave conflicting stories about the disappearance of his live-in girlfriend, coupled with a history of domestic abuse and other unsettling circumstances, was, under the "totality of the circumstances," justified based upon the emergency-aid exception to the warrant requirement); *State v. Mitchell,* 498 N.W.2d 691, 693–94 (Iowa 1993) (holding that trooper had legitimate public safety responsibility, arising from burned-out taillight, to stop defendant even though no violation of the law had occurred).

In *State v. Kersh,* this court held that an officer was justified in opening a car door to check the condition of the defendant, who was slumped behind the wheel. 313 N.W.2d 566, 568–69 (Iowa 1981). Before arriving on the scene, the officer had received a report of a possibly intoxicated subject who had backed his car off the street and up onto a lawn. *Id.* at 567. The court held that although the report itself was not enough, when combined with the officer's observations, these circumstances made the officer's actions reasonable. *Id.* at 569. The court concluded that the officer should be "commended rather than criticized for checking on defendant's state of sobriety." *Id.* The court reached its decision without citing to the community caretaking doctrine of *Cady.*

The ultimate standard under the Fourth Amendment is whether the search and seizure were reasonable in light of the facts and circumstances of the case. *Bies v. State,* 76 Wis.2d 457, 251 N.W.2d 461, 466 (Wis.1977). In a community caretaker case, a court determines reasonableness by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen. *Mireles,* 991 P.2d at 881.

This balancing requirement to determine reasonableness requires an objective analysis of the circumstances confronting the police officer: Under the circumstances, would a reasonable person have thought an emergency existed? *Carlson,* 548 N.W.2d at 142–43. To establish "reasonableness," the state has the burden of

showing specific and articulable facts that indicate their actions were proper. In addition, the scope of the entry and search "must be limited to the justification thereof, and the officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance."

*Id.* at 142 (citation omitted). The specific-and-articulable-facts standard is of course less than the probable-cause requirement applied in criminal searches. *Id.*

Implicit in any community caretaking case is the fact that there has been a seizure within the meaning of the Fourth Amendment. Otherwise there would be no need to apply a community caretaking exception. Additionally, there must be a bona fide community caretaking activity justifying the intrusion. Finally, if the first two conditions exist, the court must balance the public need and interest against the degree and nature of the intrusion upon the citizen's privacy.

■ In sum, community caretaking cases require a three-step analysis: (1) was there a seizure within the meaning of the Fourth Amendment?;(2) if so, was the police conduct bona fide community caretaker activity?; and (3) if so, did the public need and interest outweigh the intrusion upon the privacy of the citizen? ˙ *State v. Anderson,* 142 Wis.2d 162, 417 N.W.2d 411, 414 (Wis.Ct.App.1987).

■ **B. The merits.** Applying this three-step analysis, we first conclude there was a seizure within the meaning of the Fourth Amendment when Officer Ellis stopped the truck. When the police stop a vehicle and temporarily detain a citizen, that detention is a "seizure" within the meaning of the Fourth Amendment. This is so even though the detention is only for a brief period of time and for a limited purpose. *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95 (1996).

The second step in the analysis—whether the action taken by the police officer was a bona fide community caretaker activity—turns on whether the facts available to the officer at the moment of the seizure would have warranted a reasonable person to believe an emergency existed.

■ As to this step, we consider what Officer Ellis knew at the moment he stopped the truck. The officer had received a report informing him of the following. A male subject had taken "some pills" either before going to sleep or after waking up. When he awoke he was agitated and was "physically aggressive" to a woman in her apartment. The man was confused, stating that he did not know where he was and that he wanted the police to take him home. The man abruptly left in a Ford flatbed truck. One fact that the officer did not know was whether Butterbaugh, in that condition, was behind the wheel of the truck. We think a reasonable person would conclude the action Officer Ellis took in the interest of public safety and emergency aid was justified. As we observed in *Carlson,* Officer Ellis' conduct

> was model police conduct, deserving of commendation, and not condemnation. Although the public cannot always demand, or even expect, model police conduct, it would doubtlessly have been surprised—and disappointed—if the officer[ ] had done less.

548 N.W.2d at 143.

Moreover, Officer Ellis did no more than was reasonably necessary to determine whether Butterbaugh was in need of assistance. In fact, the officer was in the process of making such a determination when Crawford interfered by not cooperating with him. Based on the totality of the circumstances, we conclude the public need and interest required Officer Ellis to determine Butterbaugh's condition, and such need and interest outweighed the minimal intrusion here—the stop—upon Crawford's rights.

Because Officer Ellis had a right to be where he was when he made the observa-

tions about Crawford's suspected intoxicated condition, the incriminating evidence the officer discovered was admissible. *See Mitchell,* 498 N.W.2d at 694 ("When evidence is discovered in the course of performing legitimate community caretaking or public safety functions, the exclusionary rule is simply not applicable.") Accordingly, we find no constitutional violation. The district court correctly denied Crawford's motion to suppress. We therefore affirm its decision.

**AFFIRMED.**