NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 29, 2013
Decided February 12, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-3003

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| v. | No. 3:11-cr-30192-001-DRH |
| ANTHONY D. BADY, *Defendant-Appellant*. | David R. Herndon, *Chief Judge*. |

**O R D E R**

Anthony D. Bady pleaded guilty to possession of a firearm by a felon. *See* 18 U.S.C. § 922(g)(1). He appeals the denial of his motion to suppress the gun, which officers found inside a car in which he was a passenger. Because the officers reasonably seized Bady on suspicion that he was either attempting to break into a nearby car or dealing drugs to the occupants of that car, *see Terry v. Ohio*, 392 U.S. 1 (1968), we affirm the judgment.

On May 7, 2011, Officers Larry Lohman—of the Illinois State Police—and Josh Hubbard—of the Metropolitan Enforcement Group of Southwestern Illinois—were patrolling East St. Louis, Illinois, in an unmarked pick-up truck driven by Hubbard. As part of a task force organized by Working Against Violence Elements (WAVE), Lohman and Hubbard were searching for and hoping to deter crimes of violence, car theft, burglary, and drug dealing

because the area was known as a high-crime area. Even at the late hour, around three in the morning, there were a significant number of people on the streets because several clubs in the area operated late into the night, drawing patrons from nearby St. Louis, Missouri, where clubs close earlier in the evening.

At around 2:45 in the morning, the officers noticed a red Oldsmobile Alero parked legally on the same side of the street they were patrolling. Though the driver remained seated, the officers saw the passenger—later identified as Bady—get out of the car and approach the passenger's side of a tan car parked directly in front of the Alero. The officers suspected that Bady might be trying to break into the car, which appeared unoccupied, or, if the car was occupied, that Bady might be conducting a drug transaction. The officers continued to drive down the street past the tan car and then made a u-turn. As they turned and approached the Alero, Officer Hubbard saw Bady quickly return to the Alero and sit down in the passenger's side. Hubbard pulled in front of the Alero at an angle to block it in and prevent it from driving away. The officers had activated their emergency headlights but the driver of the Alero nevertheless tried to back up to pull around the officers' car. The officers interpreted this action as an escape attempt, exited their car (dressed in clothing clearly marked "police"), and ordered the driver to stop, which he did.

Officer Lohman approached the passenger side of the Alero. Bady got out of the car quickly, but Lohman ordered him to get back in and then asked for identification as well as whether he was doing anything illegal when he approached the tan car. When Bady offered no response, Lohman ordered him out of the car and patted him down for weapons. In Bady's breast pocket, Lohman felt a cellophane bag, and asked Bady whether it contained marijuana; Bady admitted that it did. Other WAVE officers arrived, giving Lohman the opportunity to lean into the Alero. He discovered a firearm, which he recognized as a Glock pistol, wedged between the car's center console and the passenger seat. Shortly thereafter, Bady admitted to another WAVE officer at the scene that he had been given the gun earlier that evening by a friend. Meanwhile, Officer Hubbard learned that the Alero was owned by the driver's girlfriend.

Bady was charged with possession of a firearm by a felon, *see* 18 U.S.C. § 922(g)(1). He filed a motion to suppress the gun, alleging that it was seized in violation of his Fourth Amendment rights. The district court conducted a hearing on that motion, during which Officers Lohman and Hubbard testified. Officers Lohman and Hubbard recounted the above narrative, but also made numerous concessions. They admitted that Bady was not out of place in the area of East St. Louis where they encountered him (given the number of young men frequenting local clubs) and that they did not observe him engage in any suspicious behavior

once he approached the tan vehicle (such as tampering with the tan car, carrying any tools for breaking into a car, or bending over to talk to any occupant of the car).

The district court denied Bady's motion to suppress. The court concluded that Officers Lohman and Hubbard executed a lawful *Terry* stop because, based on the totality of the circumstances, they had reasonable suspicion to believe that Bady was about to commit a carjacking or drug deal, and their decisions to frisk Bady, look inside the Alero, and seize the gun and marijuana were reasonable under the circumstances. In concluding that the officers had reasonable suspicion, the district court noted that Bady was apprehended late at night in a high-crime area, was observed approaching a seemingly unoccupied car before rushing back to the Alero, and attempted to flee when the officers approached. Bady subsequently pleaded guilty to the firearm charge, but reserved in his plea agreement the right to appeal the denial of his motion to suppress. The district court accepted Bady's plea and sentenced him to 30 months' imprisonment.

An officer may, consistent with the Fourth Amendment, "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 21); *see also United States v. Bohman*, 683 F.3d 861, 864 (7th Cir. 2012). On appeal Bady argues that Officers Lohman and Hubbard did not have reasonable suspicion to believe that he was engaged in any criminal activity. Bady contends that the officers seized him at the moment they blocked in the Alero, at which point, he claims, they could point to only his presence in a high-crime area and their observation of him walking up to and away from a car to support their suspicions.

But Officers Lohman and Hubbard did not seize Bady until he complied with their demand to stop, and at that point the officers had reasonable suspicion given Bady's attempt to flee. A seizure occurs only "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 19 n.16; *see United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011). Bady argues that he was seized at the moment the officers blocked in the Alero because at that point a reasonable person in his position would not have felt free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980). But Bady points to only a necessary rather than a sufficient condition for a seizure. *See California v. Hodari D.*, 499 U.S. 621, 628 (1991); *Leaf v. Shelnutt*, 400 F.3d 1070, 1090 (7th Cir. 2005). An officer's show of authority is not a seizure until the person at whom that show of authority is directed actually submits. *Hodari D.*, 499 U.S. at 625; *Griffin*, 652 F.3d at 798. Though the officers' use of their emergency lights and their attempt to position their car to block in the Alero unquestionably qualify as shows of authority, *see Griffin*, 652 F.3d at 798 (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597–98 (1989)), Bady and the driver of the Alero did

not initially submit to the officers. Instead the driver attempted to flee by backing up and attempting to drive around the officers' truck. Though several of our cases hold that a seizure occurs when officers block in a car, those cases are distinguishable because the individuals detained immediately submitted to the officers. S*ee, e.g., United States v. Green*, 111 F.3d 515, 520 n. 1 (7th Cir. 1997); *United States v. Packer*, 15 F.3d 654, 657 (7th Cir. 1994).

Bady next argues that Officers Lohman and Hubbard did not reasonably suspect that he was committing or about to commit any criminal offense. Bady does not, however, challenge the district court's conclusions that he was in a high-crime area and, along with the driver, attempted to flee the officers after they blocked in the Alero. In support of reasonable suspicion officers cannot rely on a "mere hunch" but must instead be able to point to "specific and articulable facts" that suggest criminal activity. *Terry*, 392 U.S. at 21; *see also Gentry v. Sevier,* 597 F.3d 838, 845 (7th Cir. 2010); *United States v. Hampton*, 585 F.3d 1033, 1038 (7th Cir. 2009). To determine whether officers had reasonable suspicion, courts consider the totality of the circumstances known to the officers at the time of the seizure. *See Terry*, 392 U.S. at 21–22; *United States v. Hicks*, 531 F.3d 555, 558 (7th Cir. 2008); *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006). Neither Bady's presence in a high-crime area nor his flight from police, standing alone, can provide the basis for a reasonable suspicion of criminal activity. *See Illinois v. Wardlow,* 528 U.S. 119, 124–126 (2000); *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010); *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003). But taken together, these facts were enough to justify the *Terry* stop executed by Officers Lohman and Hubbard. *See Wardlow*, 528 U.S. at 124–26; *Lenoir*, 318 F.3d at 729.

Bady focuses his argument on the district court's factual determination that the officers turned on their emergency lights before blocking in the Alero. But this argument is irrelevant because, as detailed above, there was no seizure until the Alero stopped. The officers' testimony makes clear that the lights were activated by the time Bady submitted. This court would review the district court's finding for clear error, *see Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Tyler*, 512 F.3d 405, 409 (7th Cir. 2008), and the officers' testimony adequately supports the district court's finding. Lohman, though uncertain, testified that he believed Hubbard turned the lights on before or while making the u-turn. And Hubbard's testimony, though conflicting, also supports the district court's finding. Hubbard testified on direct that he activated his lights after pulling in front of the Alero, but on cross that he had turned on the lights as he was turning his car around. In either case, he activated the lights before the seizure occurred and before the Alero even attempted to pull away.

AFFIRMED.