# IN THE COURT OF APPEALS OF IOWA

No. 15-0622
Filed June 15, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MEHMED IVANKOVIC,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Steven W. Guiter (motion to suppress), and Gregory D. Brandt (trial), District Associate Judges.

Mehmed Ivankovic appeals from the denial of his motion to suppress and subsequent conviction for operating while intoxicated.  **AFFIRMED.**

Eric W. Manning of Manning Law Office, P.L.L.C., Urbandale, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau and Genevieve Reinkoester (until withdrawal), Assistant Attorneys General, for appellee.

Heard by Danilson, C.J., and Doyle and Tabor, JJ.

**DANILSON, Chief Judge.**

Mehmed Ivankovic appeals from a conviction of operating while intoxicated. The crux of this case is whether Ivankovic was subject to an unreasonable seizure. A preliminary question, however, is when Ivankovic was seized. The defendant asserts it was when a police officer turned on his patrol car lights near the defendant's parked and running car. The State responds that no seizure occurred before Ivankovic was aroused; but no matter when the seizure occurred, the State contends it was authorized by the officer's community caretaking function. We agree with the State on both issues and affirm.

**I. Background Facts and Proceedings.**

There are no real disputes about the facts as found by the district court.

> On March 25, 2014, at around 11:30 p.m. Polk County Deputy Barber's attention was drawn to a car parked in the Earl's Tire Center parking lot with its lights on. Earl's Tire Center is in the 4200 Block of Northwest Second Street in Des Moines, Iowa. The deputy was performing patrol and traffic enforcement functions on this date.
> Deputy Barber, on seeing the car with its lights on, pulled into Earl's Tire Center lot and parked his marked patrol vehicle at an angle such that his headlights were shining on the driver's side of the defendant's vehicle. The deputy saw the defendant sitting in the driver's seat. The driver's seat was reclined, and the car was running with its lights on. [Upon activating his lights, we are able to hear the deputy radio dispatch that he was investigating a car running in the lot with a male passed out behind the wheel.]

Ivankovic was arrested after being roused and failing field sobriety tests. He was charged with operating while intoxicated, second offense, and filed a motion to suppress, contending there was "neither probable cause nor reasonable suspicion to conduct an investigatory or traffic stop of the defendant or his vehicle." He also argued there "was no legitimate reason to engage in a

community caretaking function to check on defendant's welfare." He argued that he "maintained an expectation of privacy which was unreasonably intruded upon by the traffic stop and seizure and which was illegal and unlawful and violated his rights afforded to him under the Fourth Amendment to the United States Constitution and Article I, section 8 of the Iowa Constitution." Ivankovic sought to suppress "[a]ny subsequent evidence gained from the illegal stop and seizure as well as any fruits of the poisonous tree . . . including any admissions by Mr. Ivankovic, as well as results of field sobriety testing, results of the preliminary breath test, and the 'refusal' of the Datamaster test."

Following a hearing on the motion to suppress, the district court ruled:

Deputy Barber testified before exiting his marked patrol car and approaching the defendant's vehicle he activated the car's red and blue flashing lights. He stated the reason for activating the lights was to activate the car's audio and video recorder, make his presence known, all of which provides him with protection along with a show of authority.

Deputy Barber then approached the defendant's car and knocked on the window with his flashlight. [Testified, "And as I approached, I could see the male passed out in the driver's seat."] The defendant did not wake up. The deputy testified he then opened the driver's side car door and shook him to wake him up. These events are shown in State's Exhibit 1, the in-car video.

The officer on waking the defendant noted he was very confused and disoriented, his eyes were bloodshot and watery and he was slurring his words, the officer could smell an odor of an alcoholic beverage on the defendant's breath.

The area of Des Moines that Earl's Tire Center is located in what was described by the officer as a high crime area. The officer further testified that there had been burglaries in the area, mainly of car dealerships, one of which was located next to Earl's and one across the street.

The officer on cross-examination testified his purpose in approaching the defendant's car was to investigate why it was there with its lights on. The officer had not received any alerts from dispatch at that time of criminal activity occurring, but the officer had investigated burglaries in the area before including at Earl's Tire Center when tires were being taken from a tire rack.

. . . .

. . . Mr. Ivankovic was asleep and unaware of Deputy Barber's presence until the Deputy opened the car door and shook Mr. Ivankovic to wake him up.

The issue for the Court becomes whether Mr. Ivankovic was "seized" for the purposes of the Fourth Amendment, if he was asleep. Based on the evidence presented Mr. Ivankovic was asleep until awake[ne]d by Deputy Barber. Mr. Ivankovic while asleep did not see the deputy's car's flashing lights or any other show of authority that may have been present.

The Federal Court of Appeals for both the Sixth and Seventh Circuits have held there to be no seizure where the person is asleep or unconscious. *Vargas v. City of Philadelphia*, [No. 11-2639,] 2013 WL 6077160[, at *6 (E.D. Pa.] Nov. 18, 2013), citing *Leaf v. Shelnutt*, 400 F.3d 1070, 1090 (7th Cir. 2005), and *Peete v. Metro Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217[, 217] (6th Cir. 2007).

The Court holds that Mr. Ivankovic was not seized when Deputy Barber approached the defendant's vehicle as he was unaware the deputy was even there. Deputy Barber had reasonable suspicion sufficient to detain Mr. Ivankovic after he was awakened due to observing his slurred speech, bloodshot, watery eyes and the smell of alcohol. The defendant's car was running with its headlights on.

The Court does not need to address the "community caretaking" exception to the Fourth Amendment for the same reasons as addressed in *State v. Wilkes*[, 756 N.W.2d 838 (Iowa 2008)].

Ivankovic appeals, contending the court erred in denying his motion to suppress because he was subjected to an unreasonable seizure.

**II. Scope and Standard of Review.**

We review constitutional claims de novo. *State v. Kurth*, 813 N.W.2d 270, 272 (Iowa 2012).

**III. Discussion.**

In order for the Fourth Amendment to apply, there must first be a seizure. *Wilkes*, 756 N.W.2d at 842. "[W]e make an independent evaluation [based on] the totality of the circumstances as shown by the entire record." *Kurth*, 813

N.W.2d at 272 (citations omitted). "Each case must be evaluated in light of its unique circumstances." *Id.* (citations omitted).

Ivankovic asserts the police had no probable cause or reasonable suspicion to stop his vehicle. But there was no "traffic stop." An officer at 11:30 p.m. observed a car with its lights on in a parking lot of a closed business. When the officer pulled into the lot, the officer saw a male in a reclined driver's seat and a car running with its lights on. He approached the parked vehicle. The occupant did not stir. As observed in *Wilkes*, "[t]he officer, like any other citizen, has a right to look into the car. As a result, no seizure occurred when the officer merely approached [the defendant's] parked vehicle." 756 N.W.2d at 844.

Ivankovic argues that the use of the officer's flashing lights turned the encounter into a seizure. In *State v. Harlan*, 301 N.W.2d 717, 719 (Iowa 1981), our supreme court noted:

> [I]t is important to remember "not all personal intercourse between policemen and citizens involves 'seizures' of persons" that implicate the fourth amendment. A seizure occurs "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."
>
> Although each case must be decided on its facts, there are some guidelines as to when a person's liberty has been restrained by "physical force or show of authority." If an officer takes hold of a suspect, a seizure has occurred. A seizure might occur if there was "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance might be compelled." The use of sirens, flashing lights or other signals to pull a moving vehicle to the side of the road might also constitute a show of authority that is a seizure. One commentator suggests that a seizure occurs "if the officer engaged in conduct which a reasonable man would view as threatening or offensive even if coming from another private person."

(Citations omitted.)

We know from *Wilkes*, 756 N.W.2d at 844, that parking behind a parked vehicle without blocking the defendant's vehicle is not a seizure. We also know that an officer who uses his emergency lights and blocks a vehicle while attempting to investigate an individual in a parked car to address an alleged caretaking function will constitute a seizure—at least if the stopped individual is conscious. *See Kurth*, 813 N.W.2d at 277.

While *Harlan*, does state that a display of flashing lights "might also constitute a show of authority that is a seizure," 301 N.W.2d at 720, under the totality of the circumstances presented here, Deputy Barber did not restrain Ivankovic's liberty in any way prior to rousing him. A submission to a "show of authority" is required for a seizure to occur. *California v. Hodari D.*, 499 U.S. 621, 627–29 (1991) (holding that seizure of fleeing suspect did not occur because seizure requires the show of authority *and* submission to authority). The cases cited by the district court from other jurisdictions are in accordance with this principle. *See also United States v. Bady*, 503 F. App'x 481, 484 (7th Cir. 2013) ("Bady argues that he was seized at the moment the officers blocked in the Alero because at that point a reasonable person in his position would not have felt free to leave. But Bady points to only a necessary rather than a sufficient condition for a seizure. An officer's show of authority is not a seizure until the person at whom that show of authority is directed actually submits. Though the officers' use of their emergency lights and their attempt to position their car to block in the Alero unquestionably qualify as shows of authority, Bady and the driver of the Alero did not initially submit to the officers." (citations omitted)); *Leaf*, 400 F.3d at 1090 ("If Mr. Leaf's failure to flee can be attributed to

the fact that he was asleep or otherwise unconscious, we think that it cannot be said that the officers terminated his freedom of movement through their show of authority."); *State v. Gonzalez*, 330 P.3d 969, 972 (Ariz. Ct. App. 2014) ("Absent use of physical force, a defendant is not seized until he becomes 'aware of and submit[s] to the assertion or display of police authority.'" (citations omitted)).

At the earliest here, any seizure occurred when the officer directed Ivankovic to shut off the ignition and removed his seat belt, with which Ivankovic complied. But by this time, the officer had reasonable suspicion to believe Ivankovic was operating his motor vehicle while intoxicated. Moreover, the officer's encounter with Ivankovic was a valid community caretaking activity.

We engage in a three-step analysis when considering community caretaking claim: "(1) was there a Fourth Amendment seizure?; (2) if so, was the police conduct actual community caretaker activity?; and (3) if so, did the public need and interest outweigh the intrusion upon the defendant's privacy?" *State v. Crawford*, 659 N.W.2d 537, 543 (Iowa 2003), *cited with approval in Kurth*, 813 N.W.2d at 277.

There are three recognized categories of community caretaker activities: "(1) the emergency aid doctrine, (2) the automobile impoundment/inventory doctrine, and (3) the 'public servant' exception." *Crawford*, 659 N.W.2d at 541. This case did not involve an automobile impoundment or inventory. Thus, we look to whether the officer was engaged in offering emergency aid or a public servant. "The two doctrines . . . are closely related." *Id.* In *Crawford*, the court noted that assisting a motorist with a flat tire might be an example of the public servant doctrine, whereas "providing first aid to a person slumped over the

steering wheel with a bleeding" head gash would fall under the emergency aid doctrine. *Id.* at 541–42 (citation omitted).

Considering the objective circumstances, *see State v. Carlson*, 548 N.W.2d 138, 141–42 (Iowa 1996), we conclude Deputy Barber's actions were reasonable. At the suppression hearing, Deputy Barber testified that he thought the driver in the parked vehicle was passed out. The vehicle was running, and its lights were on. When the deputy engaged his patrol car lights, Ivankovic did not stir. When the officer shined his flashlight and knocked on the window, Ivankovic did not stir. Under similar facts, our supreme court concluded it was reasonable for an officer to enter a vehicle to check on the individual's condition and render aid when the individual is passed out, disoriented, or unconscious. *State v. Kersh*, 313 N.W.2d 566, 568–69 (Iowa 1981) (concluding the officer should be "commended rather than criticized" for checking on the defendant), *abrogated on other grounds by State v. Lake*, 476 N.W.2d 55, 56–57 (Iowa 1991).

We find that the deputy's decision to check on the welfare of the vehicle occupant was reasonable under the circumstances. The officer did no more than was "reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance." *See Crawford*, 659 N.W.2d at 542–43 (quoting *Carlson*, 548 N.W.2d at 142).

We affirm the district court's denial of Ivankovic's motion to suppress and, therefore, affirm his conviction.

**AFFIRMED.**