**IN THE COURT OF APPEALS OF IOWA**

No. 16-1720
Filed August 2, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TERRY LEE COFFMAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Story County, James B. Malloy,
District Associate Judge.


        A defendant appeals his conviction for operating while intoxicated,
claiming the district court erred in denying his motion to suppress evidence
obtained from a warrantless seizure. **AFFIRMED.**


        Matthew T. Lindholm of Gourley, Rehkemper & Lindholm, P.L.C., West
Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Kevin R. Cmelik, Assistant
Attorney General, for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

This appeal presents the question whether the community-caretaking doctrine justified the initial seizure of a motorist parked on the shoulder of a rural Iowa highway. Terry Coffman challenges his conviction for operating while intoxicated (OWI), first offense. He claims the district court erred in denying his motion to suppress evidence obtained in violation of constitutional protections against unreasonable searches and seizures. Because the record reveals a good-faith effort by a peace officer to assist the motorist as a public servant rather than to launch a criminal investigation, we affirm.

## I.     Facts and Prior Proceedings

While on late-night patrol, Story County Sheriff's Deputy Nick Hochberger noticed a car parked on the side of a rural highway outside of Slater. Deputy Hochberger testified he routinely patrols the area and was drawn to the car because it was stopped on the shoulder of the dark roadway, just after 1:00 a.m., with its brake lights engaged. Deputy Hochberger turned on the flashing red and blue lights of his patrol car as he pulled behind the parked vehicle. The deputy testified he was checking on "the welfare of the people in the vehicle." Hochberger approached the driver's window and asked the occupants: "Hi guys, everything okay tonight?" The driver, later identified as Terry Coffman, replied: "Yeah." Coffman's wife, who was in the passenger seat, piped in: "We're fine." The deputy continued the conversation: "Pulled over to the side of the road, what's going on?" Coffman told the deputy his wife was "having a neck issue" and he was "trying to do a massage or whatever."

The deputy "detected the odor of an alcoholic beverage when the defendant spoke," according to the findings of fact reached by the district court when ruling on Coffman's guilt. The court further found Coffman "had red and watery eyes" and admitted consuming four beers that night, the last drink within thirty minutes of the stop. The court also noted Hochberger gave Coffman three field sobriety tests, all of which he failed. The deputy invoked implied consent, but Coffman refused to provide a breath sample.

The State charged Coffman with first-offense OWI, in violation of Iowa Code section 321J.2 (2016). Coffman filed a motion to suppress evidence obtained during the seizure of his car, alleging violations of the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. The State argued the deputy's actions were justified under the community-caretaking exception to the constitutional protections against unreasonable search and seizure. Following a hearing, the district court denied Coffman's motion to suppress. Coffman waived his right to a jury trial and stipulated to a bench trial. The court found Coffman guilty of first-offense OWI and sentenced him to two days in jail.

Coffman now appeals and claims the community-caretaking exception did not justify the seizure of his vehicle.[1]

---

[1] Coffman urged our supreme court to retain this case to limit the scope of the community-caretaking exception under the Iowa Constitution. But the supreme court transferred the case to us; therefore, reconsideration of established case law is not possible. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

4

## II.     Scope and Standard of Review

"This controversy arises from an alleged violation of a constitutional right, making our review de novo."  *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004). The court "make[s] an independent evaluation of the totality of the circumstances as shown by the entire record."  *State v. Breuer*, 577 N.W.2d 41, 44 (Iowa 1998).

## III.     Analysis

"Evidence obtained by illegal . . . seizure is not admissible."  *State v. Stump*, 119 N.W.2d 210, 216 (Iowa 1963).  "[S]ubject to a few carefully drawn exceptions, warrantless searches are per se unreasonable."  *State v. Carlson*, 548 N.W.2d 138, 140 (Iowa 1996).  Coffman claims Deputy Hochberger illegally seized his vehicle in violation of his constitutional rights.  *See* U.S. Const. amend. IV; *see also* Iowa Const. art. I, § 8.[2]  The State agrees a seizure took place but argues it was justified by the community-caretaking exception to the warrant requirement.

The United States Supreme Court first established the community-caretaking exception in *Cady v. Dombrowski*, finding state and local police officers "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."  413 U.S.

---

[2] We realize the Iowa Supreme Court "zealously guard[s] [its] ability to interpret the Iowa Constitution differently from authoritative interpretations of the United States Constitution by the United States Supreme Court."  *State v. Wilkes*, 756 N.W.2d 838, 842 n.1 (Iowa 2008).  And while that court may impose more restrictions on the community-caretaking exception under article I, section 8 of the Iowa Constitution in future cases, s*ee State v. Kurth*, 813 N.W.2d 270, 282 (Iowa 2012) (Appel, J., concurring specially), we do not see that as the role of our court here.  Accordingly, we decline Coffman's invitation to interpret the Iowa Constitution as having "more teeth" than its federal counterpart under these circumstances.

433, 441 (1973). Our own supreme court recognizes police officers are "charged with public safety duties that extend beyond crime detection and investigation." *State v. Mitchell*, 498 N.W.2d 691, 693 (Iowa 1993).

"[T]he community caretaking exception encompasses three separate doctrines: (1) the emergency aid doctrine, (2) the automobile impoundment/ inventory doctrine, and (3) the 'public servant' exception. . . ." *State v. Crawford*, 659 N.W.2d 537, 541 (Iowa 2003) (citing Mary E. Naumann, *The Community Caretaker Doctrine: Yet Another Fourth Amendment Exception*, 26 Am. J. Crim. L. 325, 330-41 (1999) (hereinafter Naumann)). Here, only the first and third doctrines are relevant. "The [first and third] doctrines . . . are closely related." *Id.*

We perform a three-step analysis when considering community-caretaking cases: "(1) was there a seizure within the meaning of the Fourth Amendment?; (2) if so, was the police conduct bona fide community caretaking activity?; and (3) if so, did the public need and interest outweigh the intrusion upon the privacy of the citizen?" *Id.* at 543. Each case is evaluated objectively "according to its own unique set of facts and circumstances." *Kurth*, 813 N.W.2d at 277.

The first step of the analysis is not up for debate; the State concedes the deputy seized Coffman. The second step requires us to determine if Deputy Hochberger was engaged in bona fide community-caretaking activity. We address the emergency-aid doctrine first. "Under the emergency aid doctrine, the officer has an immediate, reasonable belief that a serious, dangerous event is occurring." *Crawford*, 659 N.W.2d at 541-42 (quoting Naumann, at 333). "For example, an officer providing first aid to a person slumped over the steering wheel with a bleeding gash on his head acts pursuant to the emergency aid

doctrine." *Id.* at 542 (quoting Naumann, at 334). "[A] police officer may have occasion to seize a person, as the Supreme Court has defined the term for Fourth Amendment purposes, in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity." *Kurth*, 813 N.W.2d at 275-76 (quoting *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993)). But "[t]he stop is not permitted unless 'the facts available to the officer at the moment of the seizure would have warranted a reasonable person to believe an emergency [or public service need] existed.'" *State v. Sellers*, No. 14-0521, 2015 WL 1055087, at *4 (Iowa Ct. App. Mar. 11, 2015) (quoting *Crawford*, 659 N.W.2d at 543) (alteration in original). Coffman's situation did not support an officer's "immediate, reasonable belief that a serious, dangerous event" was occurring; therefore, the seizure cannot be justified under the emergency-aid doctrine.

We next examine whether the public-servant doctrine applies. "[A]ssisting a motorist with a flat tire might be an example of the public servant doctrine." *Kurth*, 813 N.W.2d at 277. In general, an officer's community-caretaking function allows him or her to "stop vehicles in the interest of public safety." *Tague*, 676 N.W.2d at 204. "The State has a valid interest in the safety of its citizens on its roads and highways." *Mitchell*, 498 N.W.2d at 694. "Every community caretaking case must be assessed according to its own unique set of facts and circumstances because reasonableness is not a term that can be usefully refined 'in order to evolve some detailed formula for judging cases.'" *Kurth*, 813 N.W.2d at 277 (quoting *Cady*, 413 U.S. at 448). Because the public-servant doctrine has

not been extensively discussed in Iowa cases, both parties have pointed us to other jurisdictions for guidance.[3]

We find the Utah Supreme Court's recent decision in *Anderson* to be both instructive and persuasive. 362 P.3d at 1234. In that case, two deputies stopped a car pulled over on the side of a rural highway late at night with its hazard lights engaged. *Id.* Given the lights, the late hour, and the cold weather conditions, the deputies decided to check on the welfare of the vehicle's occupants. *Id.* As soon as the deputies approached Anderson, they asked if he needed assistance and noticed his bloodshot eyes. *Id.* The deputies obtained a warrant to search Anderson's vehicle and found marijuana and drug paraphernalia. *Id.* at 1235. Anderson moved to suppress the evidence, but the trial court upheld the search under the community-caretaking doctrine. *Id.* *Anderson* explained: "[C]ourts must determine whether 'the degree of the public interest and the exigency of the situation' justified the seizure." *Id.* at 1239 (citation omitted). The court concluded "a reasonable officer would have cause to be concerned about the welfare of a motorist in Mr. Anderson's situation," given he was parked along the side of the highway late at night with his hazards flashing. *Id.* at 1240.

---

[3] Coffman cites *Provo City v. Warden*, 844 P.2d 360, 364-65 (Utah Ct. App. 1992), *aff'd* 875 P.2d 557 (Utah 1994), which held evidence obtained in a community-caretaking stop without "life-threatening circumstances" must be excluded. But the State directs us to *State v. Anderson*, 362 P.3d 1232, 1237 (Utah 2015), in which the Utah courts expressly abandoned that approach and overturned *Warden*, concluding "subsequent U.S. Supreme Court opinions have fatally undermined the *Warden* standard." Coffman also relies on *Commonwealth v. Canavan*, 667 N.E.2d 264, 267 (Mass. App. Ct. 1996), which observed the "risk of abuse is real" in cases where officers are allowed to stop motorists who appear to be lost. But the Massachusetts Supreme Judicial Court subsequently upheld a vehicle seizure involving similar facts as those presented here under the community-caretaking exception. *See Commonwealth v. Evans*, 764 N.E.2d 841, 844 (Mass. 2002).

Here, Coffman asserts *he* did not require any assistance from Deputy Hochberger, and therefore, the community-caretaking doctrine should not apply to this kind of seizure. But as the *Anderson* court observed:

> A motorist may have many motivations for pulling to the side of a highway and engaging hazard [or brake] lights, ranging from the mundane to the life-threatening. The motorist could be lost, disciplining rowdy children, sleeping, or answering a cell phone call. But there is also a good chance that the motorist has run out of gas, has mechanical problems, or, worse, is experiencing a medical emergency. . . . Given the decent odds that a motorist in this situation may need help, an officer would have reason to be concerned and to at least stop to determine whether assistance is needed.

*Id.* On these facts, the Utah Supreme Court affirmed the validity of the stop under the community-caretaking exception. Other states have reached similar conclusions. *See, e.g.*, *People v. Laake*, 809 N.E.2d 769, 770-71, 773 (Ill. App. Ct. 2004) (holding community-caretaking exception justified officer stopping behind a car in the early morning hours with its brake lights engaged); *Evans*, 764 N.E.2d at 844 (holding the community-caretaking exception applied when an officer stopped a car pulled over in the breakdown lane late at night with its right blinker flashing).

The situation faced by Deputy Hochberger bears a striking similarity to the facts of *Anderson*. Coffman's car was pulled just off a rural highway with its brake lights engaged in the early morning hours. No other traffic or possible assistance appeared to be nearby. Deputy Hochberger justifiably seized Coffman to check if he needed assistance. *See Carlson*, 548 N.W.2d at 143 (opining the public would have been "surprised and disappointed" if officers had done less).

Coffman asserts a welfare check could have been accomplished without seizing his vehicle. *See Kurth*, 813 N.W.2d at 280 (suggesting an officer can provide "a friendly reminder" without stopping the driver). Coffman asserts in his brief the deputy could have pulled up next to his car to check on him. The facts suggest otherwise. In *Kurth*, the officer blocked the defendant's car into a parking space in a restaurant parking lot. *Id.* at 272. In that case, pulling in next to the defendant may have been a practical way to check on his welfare. But in this case, pulling up next to Coffman's car would have forced Deputy Hochberger to stop his car on the traveled portion of a highway, creating a potentially dangerous situation. The deputy testified he used his red and blue lights to alert Coffman and other potential travelers that he was stopped on the side of the road. Under the facts of this case, we cannot say the deputy's actions were unreasonable.

Most state courts that have considered the question recognize the community-caretaking doctrine is not confined to strictly consensual police encounters. *See State v. McCormick*, 494 S.W.3d 673, 685 (Tenn. 2015) (observing only North Dakota still limits the community-caretaking doctrine to consensual police encounters). "It is clear . . . the 'community caretaking' doctrine is analytically distinct from consensual encounters and is invoked to validate a search or seizure as reasonable under the fourth amendment." *People v. Luedemann*, 857 N.E.2d 187, 198 (Ill. 2006).

Coffman urges our recent decision in *Sellers* governs here. In that unpublished opinion, we rejected the application of the community-caretaking exception to a vehicle stopped along the road. *Sellers*, 2015 WL 1055087, at *5.

But the facts of *Sellers* are distinguishable from Coffman's case. In *Sellers,* the officer pulled behind a motorist in the early morning hours after noticing the car stopped on the shoulder with its lights on. *Id.* at *1. The officer did not use his overhead lights; instead, he shined a plain white spotlight onto the car. *Id.* Critically, the driver of the car then used her turn signal to indicate her intention to merge back onto the roadway, shifted her car into gear, and began moving forward. *Id.* Only then did the officer turn on his overhead lights and seize the car. *Id.*

In contrast to *Sellers*, Deputy Hochberger pulled behind Coffman with his red and blue lights flashing from the onset of the encounter. Coffman did not try to pull away to show he did not need assistance. The deputy testified he was concerned about the safety of the vehicle's occupants given the rural road, the lack of help available nearby, the early morning hour, and the brake lights being engaged, which indicated the driver was still in the car. The deputy's testimony was corroborated by the dashcam video showing his first inquiry was whether the driver and passenger were alright. *Sellers* does not govern the outcome here. Deputy Hochberger was justified in checking if Coffman and his wife needed help under the public-servant doctrine of the community-caretaking exception.

The third and final step of the analysis is balancing the public need and interest against the intrusion on Coffman's privacy. An officer may not do more than is reasonably necessary to determine if a vehicle's occupants require assistance. *See Crawford*, 659 N.W.2d at 543. Our supreme court engaged in this balancing in *Kurth*, concluding "the State's public safety concern . . . seem[ed] marginal at best," where a driver struck a road sign but maintained

control of the car and parked in a restaurant lot, and the officer saw the car's damage was "not significant." 813 N.W.2d at 280. But in *Kurth*, the court noted the motorist "was not on the shoulder of the road, but in the safer territory of a parking lot of an open restaurant." *Id.* at 281. In contrast to *Kurth*, Deputy Hochberger's concern for Coffman's safety was more than marginal. Coffman's car—pulled barely off the travelled portion of a dark, rural highway—posed a greater risk to its occupants and any passing motorists than Kurth's safely parked car. Deputy Hochberger had no clues to the condition of the car's occupants. He had no way of knowing if Coffman's car was drivable or if he or his wife were in need of assistance. These factors weigh in favor of the public need and interest in a welfare check. On the other side of the equation, the intrusion into Coffman's privacy was somewhat diminished because he was already pulled over. *See id.*

Balancing the minimal interference with Coffman's privacy against the public interest in determining if the vehicle's occupants needed assistance, we conclude the scale tips in favor of the State. *See Anderson*, 362 P.3d at 1240. The totality of the circumstances justified seizing Coffman's vehicle.[4] "When evidence is discovered in the course of performing legitimate community

---

[4] We emphasize that for the purpose of applying the community-caretaking exception to these facts, we consider only the time from Deputy Hochberger's activation of his lights to his inquiry whether Coffman needed assistance. As soon as Hochberger spoke to Coffman he noticed the smell of alcohol and the driver's red, watery eyes. At this point, Hochberger grew concerned Coffman was driving while intoxicated, and the nature of the seizure changed from community caretaking to an investigatory seizure based on reasonable suspicion. After administering the field sobriety tests, Hochberger believed he had probable cause to arrest Coffman for OWI. Because Coffman does not challenge the investigation following Hochberger's initial arrival at his driver's window on appeal, we limit our analysis to the community-caretaking seizure. *See Anderson*, 362 P.3d at 1240 n.1.

caretaking or public safety functions, the exclusionary rule is simply not applicable." *Mitchell*, 498 N.W.2d at 694. Thus, we affirm the district court's denial of the motion to suppress.

## IV.    Conclusion

Given the totality of the circumstances, we conclude the stop of Coffman's vehicle was justified under the community-caretaking exception to warrant requirement. Accordingly, we affirm his OWI conviction.

**AFFIRMED.**