# IN THE COURT OF APPEALS OF IOWA

No. 17-0317
Filed December 20, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CODY TYLER SMITH,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Clarke County, Monty W. Franklin, District Associate Judge.

        The defendant challenges an order denying his motion to suppress evidence. **AFFIRMED.**

        Scott A. Michels of Gourley, Rehkemper & Lindholm, P.L.C., West Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

This case presents the question of whether a police officer's initiation of a traffic stop of a vehicle in the vicinity of and shortly after a traffic accident where the purpose of the stop was to provide assistance rather than investigate crime violates the constitutional prohibition against unreasonable search and seizure. In considering this constitutional question, "our standard of review is de novo. '[W]e make an independent evaluation based on the totality of the circumstances as shown by the entire record.'" *State v. Kurth*, 813 N.W.2d 270, 272 (Iowa 2012).

Before addressing the merits of the question, we first address a jurisdictional issue. "In a criminal case, sentence constitutes final judgment." *State v. Anderson*, 246 N.W.2d 277, 279 (Iowa 1976). The defendant is entitled to appeal from final judgment as a matter of right. *See* Iowa R. App. P. 6.103(1). This appeal is not from a final judgment. Defendant Cody Smith was charged with operating while intoxicated, in violation of Iowa Code section 321J.2 (2016). As will be discussed in more detail below, he moved to suppress evidence derived from an allegedly unlawful traffic stop. The district court denied Smith's motion to suppress. The matter was tried on the minutes, and the district court entered its verdict on February 3, 2017, and set sentencing for a later date. Smith filed his notice of appeal on March 2, 2017, prior to entry of judgment and sentence. Smith's appeal was thus premature and not from final judgment. Rather than dismiss Smith's appeal, we treat his notice of appeal as an application for interlocutory review, grant the application, and address the merits of his claim. *See* Iowa R. App. P. 6.108 ("If any case is initiated by a notice of appeal . . . and the appellate court determines another form of review was the proper one, the case

shall not be dismissed, but shall proceed as though the proper form of review had been requested.").

The facts and circumstances relevant to the merits of the issue are not in dispute. At approximately 4:30 a.m., a deputy of the Clarke County Sheriff's Office and two police officers of the City of Osceola were dispatched to a single-car accident. Dispatch advised that the car was in a ditch and a subject had been observed walking eastbound from the accident. When the officers arrived at the scene of the accident, the driver was nowhere to be found. But the officers did find a driver's license on the driver's side seat. The license belonged to Cody Smith. The vehicle was registered to Steven Smith. As the officers were investigating the accident, they observed a van drive by and briefly stop and turnaround in a nearby driveway. The officers ran a check on the van's license plate and learned the van was registered to Noreen Smith. The addresses for Noreen and Steven Smith were the same. The officers assumed the driver of the van was looking for or had found the person who crashed the vehicle. The officers stopped the van. One of the officers testified he did so to provide assistance to the van driver in the event van driver was searching for the person who had crashed the vehicle or to check on the welfare of the person who had crashed the vehicle in the event the van driver had already found the person. The officer's assumption proved true. Cody Smith was in the van, and he was intoxicated. Cody was arrested and charged with operating while intoxicated (OWI). Cody moved to suppress evidence obtained as a result of the seizure of the van. His motion was denied on the ground the officers were exercising a community caretaking function in stopping the van.

On appeal, the defendant contends the traffic stop was illegal, and he seeks relief under the federal and state constitutions. The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment is applicable to state actors by incorporation via the Fourteenth Amendment. *See Mapp v. Ohio,* 367 U.S. 643, 660 (1961). The touchstone of the Fourth Amendment is reasonableness. *See Rodriguez v. United States,* 135 S. Ct. 1609, 1617 (2015) (Thomas, J. dissenting) (stating the text of the Fourth Amendment "indicates, and . . . we have repeatedly confirmed, 'the ultimate touchstone of the Fourth Amendment is "reasonableness"'" (quoting *Brigham City v. Stuart,* 547 U.S. 398, 403 (2006))); *State v. Kreps,* 650 N.W.2d 636, 640 (Iowa 2002).

The text of article I, section 8 of the Iowa Constitution is materially indistinguishable from the federal constitutional provision. Nonetheless, the defendant requests this court to interpret the Iowa Constitution to provide greater protection than the Fourth Amendment, contending "Iowa courts cannot interpret the Iowa Constitution to provide less protection than that provided by the United States Constitution." The contention is incorrect and predicated on a misunderstanding of the interplay between federal and state law. Depending upon the particular issue, our precedents interpreting article I, section 8 may provide *greater or lesser* protection than cases interpreting the Fourth Amendment. *See Hulit v. State,* 982 S.W.2d 431, 437 n.11 (Tex. Crim. App. 1998) (quoting Hans A Linde, *E Pluribus—Constitutional Theory and State Courts,* 18 Ga. L. Rev. 165, 179 (1984)) ("The right question, is not whether a state's guarantee is the same as

or broader than its federal counterpart as interpreted by the Supreme Court.  The right question is what the state's guarantee means and how it applies to the case at hand.  The answer may turn out the same as it would under federal law.  The state's law may prove to be more protective than federal law.  The state law also may be less protective.  In that case the court must go on to decide the claim under federal law, assuming it has been raised.").  Regardless, while the defendant has made a strong argument that the Iowa Constitution should be interpreted differently to disallow the traffic stop at issue, we decline to interpret the Iowa Constitution differently from the Federal Constitution on this issue.  As a general rule, the task of materially altering substantive rights is best left to the Supreme Court of Iowa.  *See Spencer v. Philipp*, No. 13-1887, 2014 WL 4230223, at *2 (Iowa Ct. App. Aug. 27, 2014).

At issue in this case is the legality of the stop of the van.  As a general rule, a traffic stop is a "seizure" within the meaning of the Fourth Amendment.  *See Whren v. United States,* 517 U.S. 806, 809–10 (1996).  A traffic stop is constitutionally reasonable when made "for investigatory purposes when the officer has a reasonable, articulable suspicion that a criminal act has occurred, is occurring, or is about to occur."  *State v. Vance,* 790 N.W.2d 775, 780 (Iowa 2010) (citing *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000); *State v. Kinkead,* 570 N.W.2d 97, 100 (Iowa 1997)); *see also Terry v. Ohio,* 392 U.S. 1, 20 (1968).  A traffic stop may also be constitutionally reasonable if the stop was initiated to conduct a community caretaking function.  *See State v. Crawford*, 659 N.W.2d 537, 543 (Iowa 2003) (describing community caretaking doctrine).

The community caretaking doctrine is well established. In *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973), the Supreme Court explained that police officers "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Searches or seizures conducted pursuant to a community caretaking function are constitutionally reasonable despite "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means." *Cady*, 413 U.S. at 447. Ultimately, "the standard under the Fourth Amendment is whether the search and seizure were reasonable in light of the facts and circumstances of the case." *Crawford*, 659 N.W.2d at 542. "In a community caretaker case, a court determines reasonableness by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen." *Id.*

In resolving Smith's claim, we must first determine whether there was a "bona fide community caretaking activity justifying the intrusion." *Id.* at 543. The Iowa Supreme Court has recognized the community caretaking doctrine encompasses at least three separate doctrines: the emergency aid doctrine, the automobile impoundment/inventory doctrine, and the public servant doctrine. *See id.* at 541. At issue in this case are only the first and third doctrines. The two doctrines are closely related. *See id.* "Under the emergency aid doctrine, the officer has an immediate, reasonable belief that a serious, dangerous event is occurring." *Id.* at 541–42 (quoting Mary E. Naumann, *The Community Caretaker Doctrine: Yet Another Fourth Amendment Exception*, 26 Am. J. Crim. L. 325, 333–

34 (1999)).  Under the public servant doctrine, the officer has a reasonable belief "that there is a difficulty requiring his general assistance."  *Id.* at 542.

On de novo review, we conclude the officers in this case were exercising a bona fide community caretaking function.  In reaching that conclusion, we undertake an objective analysis of the circumstances confronting the officers at the time and the officers' responsive conduct.  *See id.*; *see also State v. Mireles*, 991 P.2d 878, 880 (Idaho Ct. App. 1999) ("The community caretaking function involves the duty of police officers to help citizens an officer reasonably believes may be in need of assistance.").  Here, the officers responded to an accident in the early morning hours with the knowledge someone was observed walking away from the accident.  Upon arriving at the scene, the officers could not find the driver but did find the Cody Smith's driver's license on the front seat.  The vehicle was registered to Steven Smith.  From this, the officers reasonably could have inferred a familial relationship between the owner of the vehicle and the driver of the vehicle.  While responding to the scene, officers observed a van registered to Noreen Smith drive by and turn around in a driveway.  It was early in the morning in a low-traffic area.  The responding officers learned the registered owner of the van, Noreen Smith, had the same address as the owner of the vehicle left at the scene, Steven Smith.  From this, the officers could reasonably have inferred a familial relationship between the driver of the vehicle in the ditch, the owner of the vehicle in the ditch, and the van driver.  The officers reasonably surmised the driver of the van needed assistance in searching for the driver of the vehicle in the ditch or the driver of the van had found the driver of the vehicle in the ditch and the driver of the vehicle in the ditch might require medical assistance.

We reject Smith's contention that the officers were not exercising a bona fide community caretaking function because there was not stronger evidence of injury or distress—for example, reports of an injured person, blood at the crash site, or calls for medical assistance. While readily apparent evidence of injury or distress would have provided greater support for the officers' conduct, the absence of readily apparent evidence of injury or distress does not render the officers' conduct unreasonable. For example, it is not unreasonable to conclude a driver in an accident may have suffered an injury or injuries that might not leave evidence at the scene, including, for example, a concussion, soft tissue injury, or broken bones. The concern for the driver was particularly acute here. Dispatch reported someone was observed walking eastbound from the crash. The crash occurred early in the morning before sunrise. A potentially confused and injured person walking along a roadway in the dark creates further risk of injury to the potentially injured pedestrian or to motorists who might have to take evasive action to avoid injuring the person. In determining whether the community caretaking function is applicable, we consider "whether the facts available to the officer at the time of the stop would lead a reasonable person to believe that the action taken by the officer was appropriate." *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004). The initiation of a traffic stop for the purpose of providing assistance in searching for an injured motorist or to provide medical care to an injured motorist is appropriate action.

Having concluded the officers engaged in a bona fide community caretaking function in stopping the van to determine whether any assistance was necessary, we next address whether the public need at the time of the stop outweighs the intrusion upon the motorist's privacy. We conclude the public need outweighs the

intrusion. First, motorists have only a limited privacy interest in their vehicle. *See Cardwell v. Lewis*, 417 U.S. 583, 590 ("One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view."). Second, the intrusion upon *privacy* here was limited. The traffic stop interfered more with the van driver's *liberty interest* than the van driver's *privacy interest*. Third, our court has stated a traffic stop under these circumstances is only a "minimal intrusion." *Crawford*, 659 N.W.2d at 543. Fourth, the minimal intrusion here was lessened because the stop was precipitated by the reasonable belief that the van driver might need assistance in searching for a potentially injured relative or the van driver's relative might be in need of medical attention. Finally, "[w]hen an officer believes in good faith that someone's health or safety may be endangered . . . public policy does not demand that the officer delay any attempt to determine if assistance is needed." *State v. Gocken*, 857 P.2d 1074, 1080 (Wash. Ct. App. 1993). Indeed, it would have been a dereliction of duty for the officers to decline assistance under the circumstances presented.

For the foregoing reasons, we conclude the traffic stop at issue was constitutionally reasonable as a permissible and appropriate exercise of the community caretaking function. "When evidence is discovered in the course of performing legitimate community caretaking or public safety functions, the exclusionary rule is simply not applicable." *State v. Mitchell*, 498 N.W.2d 691, 694 (Iowa 1993). The district court thus did not err in denying the defendant's motion to suppress evidence.

**AFFIRMED.**